**SAM AND MAC, INC., a Michigan Corporation, Appellant–Plaintiff,**

v.

**James T. TREAT, Appellee–Defendant.**

**No. 71A05–0204–CV–171.**

Court of Appeals of Indiana.

Feb. 20, 2003.

William L. LaBre, The Law Office of William L. LaBre, J.D., Edwardsburg, MI, Attorney for Appellant.

Jacob S. Frost, Thorne · Grodnik, LLP, Elkhart, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Sam and Mac, Inc. (SMI), appeals from the trial court's grant of summary judgment in favor of Appellee–Defendant, James T. Treat (Treat).

We affirm.

### ISSUE

SMI raises two issues on appeal, which we consolidate and restate as follows: whether the trial court properly granted summary judgment in favor of Treat.

### FACTS AND PROCEDURAL HISTORY

Anthony L. Gruda and Sharon R. Gruda (the "Grudas") owned and operated Gruda Enterprises, Inc. (Gruda Enterprises), which in turn operated The Kitchen Works, a kitchen supply business.[1] On March 5, 1998, Gruda Enterprises contracted to sell a set of kitchen cabinets to SMI, a commercial construction and contracting corporation. Gruda Enterprises was also to deliver and install the cabinets. Because it did not have the cabinets in stock, Gruda Enterprises ordered them from a manufacturer. On March 14, 1998, nine days after placing the order, SMI pre-paid Gruda Enterprises for the cabinet order.

On May 14, 1998, prior to delivery and installation of the cabinets, the Grudas ceased operation of Gruda Enterprises and filed for personal bankruptcy. Gruda Enterprises did not file for bankruptcy and was not dissolved. Instead, the Grudas' stock in Gruda Enterprises became part of their bankruptcy estate. Treat and other secured creditors sued Gruda Enterprises, which owed them money.[2]

When no cabinets were delivered or installed, and the Grudas ceased operation of Gruda Enterprises, SMI asked Treat, who was the landlord of Gruda Enterprises, to open the business premises and permit SMI to remove cabinets from the property. Treat declined, stating that he feared he would incur liability to Gruda Enterprises if he started giving away its inventory. SMI sued Treat for criminal conversion, claiming inter alia punitive damages, attorney's fees, treble damages, and costs. In his answer, Treat denied liability.

On April 16, 1999, SMI moved for partial summary judgment, alleging:

(1) the cabinets that it had ordered had been received by Gruda Enterprises from the manufacturer and the cabinets were identified to the contract of sale and installation between Gruda Enterprises and [SMI];

(2) [SMI] had title to the cabinets under Indiana Code Section 26–1–2–401; and

---

1. We have adopted the applicable facts found in *Treat v. Sam and Mac, Inc.*, No. 71 A03–0006–CV–203, slip. op., 741 N.E.2d 803 (Ind. Ct.App. January 10, 2001).

2. We note that Treat owned Kitchen Wholesalers, Inc., from approximately 1987 to approximately June 20, 1996. On or about June 20, 1996, Kitchen Wholesalers, Inc. sold its assets, inventory, equipment, and business to Gruda Enterprises. The Grudas executed an Agreement for Sale of Assets, Lease, and Security Agreement, as well as a Promissory Note in which they agreed to pay $45,000 for the assets, inventory, equipment, and business, and to pay monthly rent of $1,500 for the premises where the business was located, and secured their obligations with inventory, equipment, and proceeds therefrom, of the business which they were purchasing. Treat filed and perfected a security interest in the accounts receivable, inventory, and equipment of The Kitchen Works on August 28, 1998. The Grudas currently owe Treat $61,794.99.

(3) [SMI] had title to the cabinets due to a special property interest in the cabinets under Indiana Code Sections 26–1–2–501 and –502.

(Appellant's App. pp. 185–89).

In its partial summary judgment motion, SMI also asked that its case be severed from the consolidated cause and set for trial on the issue of conversion.[3] Treat responded and filed a cross-motion for summary judgment. Treat asserted that SMI failed to carry its burden of establishing that any set of cabinets had been identified to the contract of sale and installation between SMI and Gruda Enterprises, and that, as a matter of law, SMI did not have title under Ind.Code § 26–1–2–401, I.C. § 26–1–2–501, and I.C. § 26–1–2–502. On May 5, 2000, the trial court granted partial summary judgment to SMI, finding that "the kitchen cabinets in question were custom cabinets, clearly identifiable to the contract in question and fully paid for by [SMI]. They were thus sold to [SMI] and were not inventory waiting to be sold, as to which a security interest could have attached." (Appellant's App. p. 276). The cross-motion for summary judgment filed by Treat was denied. The trial court also severed SMI's case from the consolidated cause and set a hearing on SMI's damages. Because the trial court set the matter for a hearing on damages rather than for a trial on conversion as requested by SMI, it appears that the trial court implicitly ruled that Treat was liable for criminal conversion.

On May 15, 2000, Treat petitioned the trial court to certify the case for interlocutory appeal. The trial court granted petition on the same day. Thereafter, we accepted jurisdiction. On January 10, 2001, we reversed the entry of partial sum-

mary judgment, and remanded the cause for further proceedings. On August 1, 2001, Treat filed a motion for summary judgment claiming that SMI did not have a possessory interest in the cabinets and that SMI failed to prove its prima facie case for criminal conversion. On September 7, 2001, SMI filed its' motion and brief in opposition to summary judgment.

On March 20, 2002, the trial court granted summary judgment in favor of Treat. The trial court determined that SMI failed to prove that it had either an ownership or a possessory right to the subject property at the times relevant to its claim. As to this essential element, the trial court found that there was no genuine issue of material fact and that Treat was entitled to judgment as a matter of law. Additionally, the trial court held that SMI failed to prove its prima facie case for criminal conversion. I.C. § 35–43–4–3 requires proof that unauthorized control was executed over property in which another person has ownership or possessor rights. The trial court found that SMI did not have ownership or possessor rights. Therefore, the trial court concluded that SMI could not, as a matter of law, maintain its claim against defendant under I.C. § 34–24–3–1 predicated as it was under I.C. § 35–43–4–3.

SMI now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. *Standard of Review*

At the outset, we note that we apply a de novo standard of review to this case. On appeal, this court looks at all the facts disclosed in the Ind. Trial Rule 56(C) designations, not just the facts most favorable to the summary judgment.[4] Summary

---

3. Originally, this case was consolidated with Keybank National Associate v. Gruda Enter-

prises, Inc., Kitchen Wholesalers, Inc., James T. Treat, and NBD Equipment Finance, Inc.

4. The de novo standard of review is a result of

judgment is appropriate only if the pleadings and evidence sanctioned by the trial court show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.R. 56(C). The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). Summary judgment will be affirmed if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Figg v. Bryan Rental, Inc.*, 646 N.E.2d 69, 71 (Ind.Ct.App.1995), *trans. denied.* A trial court's grant of summary judgment is "clothed with a presumption of validity." *Id.*

II. *Title and Ownership of the Cabinets*

In the instant case, SMI contends that there was a completed sale between SMI, as the buyer, and Gruda Enterprises, as the seller. Specifically, SMI maintains that title to the cabinets under I.C. § 26–1–2–401(3)(b) passed to SMI when the contract for sale was modified by agreement and by custom and usage of trade under I.C. § 26–1–2–208 and I.C. § 26–1–2–209. Therefore, SMI argues that the trial court improperly granted summary judgment in favor of Treat because they held title and, thus, a possessory interest in the cabinets.

■ Here, the contract is governed by Article I, Chapter 2 of the Indiana Uniform Commercial Code (UCC).[5] I.C. § 26–1–2–401 establishes the point in time at which title passes from seller to buyer. Specifically, I.C. § 26–1–2–401(2) provides,

in pertinent part, that unless explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with respect to the physical delivery of goods. The record shows that Gruda Enterprises never physically delivered the cabinets to SMI at the agreed upon destination. Therefore, we find that title did not pass under I.C. § 26–1–2–401(2).

■ Moreover, the record indicates that SMI and Gruda Enterprises did not have an explicit agreement to pass title at any other time, or at any time prior to actual delivery of the cabinets. SMI argues that title passed to it under I.C. § 26–1–2–401(3)(b), when the contract for sale of the cabinets was modified by agreement and by custom and usage of trade under I.C. § 26–1–2–208 and I.C. § 26–1–2–209. However, the record reflects that SMI admitted that the terms of the contract required Gruda Enterprises to not only order the cabinets, but to deliver and install them at the location specified by SMI, *i.e.* the house that SMI was building. I.C. § 26–1–2–403(3) applies to purchases of goods where delivery is to be made without moving the goods. SMI argues that since the cabinets were identified at the time of contracting and no documents needed delivery, title passed at the time and place of contracting. *See* I.C. § 26–1–2–403(3)(b). Alternatively, SMI contends that the phone call between Gruda Enterprises and SMI, when the cabinets arrived at the warehouse, modified the contract by

Ind. Appellate Rule 46(A)(6)(b), which provides, in pertinent part, that the facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed. In order to determine whether summary judgment was properly granted, we must look at all of the facts designated to the trial court, not just the facts most favorable to the judgment.

5. It appears that the ordering of the cabinets and the terms stated above constituted the terms of a contract between SMI and The Kitchen Works/Gruda Enterprises. We note that only an order form/quote was designated as proof that a contract existed.

agreement and by custom and usage of trade. *See* I.C. § 26–1–2–208 and I.C. § 26–1–2–209.

■ We find that title to goods cannot pass under a contract for sale prior to their identification in the contract. *See* I.C. § 26–1–2–401(1). This does not mean that title passes when the goods are identified. It only means that identification is merely the earliest possible opportunity for title to pass. I.C. § 26–1–2–401(2)(b) states that "[i]f the contract requires delivery at destination, title passes on tender there." In the present case, tender did not occur when Gruda Enterprises called SMI to notify it that the cabinets were in and ready to be delivered and installed. SMI requested that the cabinets remain at the warehouse until the house it was building was ready for the cabinets to be installed. The contract was not modified by agreement or by custom or usage of trade. In fact, we find that SMI and Gruda Enterprises agreed to a destination point, *i.e.* the house that SMI was building. Accordingly, we find that I.C. § 26–1–2–401(2)(b) is also applicable. The title to the cabinets did not pass to SMI because the cabinets were not delivered and installed at the agreed upon destination. Therefore, we conclude that SMI does not have a possessory interest in the cabinets.

■ With the above in mind, we note that I.C. § 26–1–2–501 establishes when identification of goods occurs. SMI claims that the issue of whether "title" passes is not dispositive of the issue of "ownership" under the UCC. SMI argues that it owned the cabinets because payment was made in full. However, we agree with the trial court that for the sake of analysis of the ownership issue, it is assumed that the goods were identified to the contract when the goods were shipped, marked, or otherwise designated by the seller as goods to which the contract refers. *See* I.C. § 26–1–2–501(1)(b). It is undisputed that there was no explicit agreement as to when identification would occur. In fact, the record shows, at the time the contract was made, the cabinets were not in existence and identified. We find, however, that it would make no difference in the outcome of this analysis if the cabinets were identified because identification, if and when it does occur, does not confer either ownership or possessory rights in SMI. Here, SMI argues that the goods were identified when the contract was made because the contract was for the sale of goods already existing and identified under I.C. § 26–1–2–501(1)(a). We find that the record is devoid of facts supporting this argument. Even if the record supported SMI's contention, our analysis would not change, for the reason that identification does not, in and of itself, confer either ownership or possessory rights in the goods.

■ SMI might have secured possessory rights in the goods if Gruda Enterprises became insolvent within ten days of receiving SMI's one and only payment for the cabinets. *See* I.C. § 26–1–2–502(1). The record does not support even an inference that this occurred. On March 14, 1998, SMI paid for the cabinets as well as for delivery and installation of the cabinets. Gruda Enterprises closed their business sometime between April 20, 1998 and May 14, 1998. There is no evidence that Gruda Enterprises was insolvent or closed on or before March 24, 1998. Clearly, we conclude that SMI does not have a possessory interest in the cabinets.

### III. *Criminal Conversion*

In the present case, SMI argues that the trial court improperly granted summary judgment in favor of Treat. Specifically, SMI contends that Treat committed criminal conversion. Therefore, SMI maintains, there is a genuine issue of material fact

under I.C. § 34–24–3–1 and I.C. § 35–43–4–3.

The Indiana crime victim's relief act allows treble damages in certain civil actions by crime victims. The statute provides, in relevant part:

If a person suffers a pecuniary loss as a result of a violation of I.C. § 35–43, I.C. § 35–42–3–3, I.C. § 35–42–3–4, or I.C. § 35–45–9, the person may bring a civil action against the person who caused the loss for the following:

(1) An amount not to exceed three (3) times the actual damages of the person suffering the loss.

(2) The costs of the action.

(3) A reasonable attorney's fee.

*See* I.C. § 34–24–3–1.

■■ In this case, SMI brought a complaint for damages under the Indiana crime victim's relief act pursuant to the criminal conversion statute, which provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." I.C. § 35–43–4–3. The Indiana crime victim's relief act allows a person who has suffered a pecuniary loss as a result of a violation of criminal conversion to bring a civil action to recover the loss. Unlike in a criminal trial, a claimant need only prove by a preponderance of the evidence that the defendant committed the criminal act. *Gilliana v. Paniaguas,* 708 N.E.2d 895, 899 (Ind.Ct.App.1999). A criminal conviction for conversion is not a condition precedent to recovery in a civil action brought under the Indiana crime victim's relief act. *Id.* However, the claimant must prove all of the elements of the alleged criminal act. *Id.*

■ Treat claims that SMI failed to prove that he had the requisite intent under the criminal conversion statute to defraud it through control of its property.

In any criminal conversion action, criminal intent is an essential element that must be proven. *Summit Account and Computer Service, Inc. v. RJH of Florida, Inc.,* 690 N.E.2d 723, 727 (Ind.Ct.App.1998). It is this mens rea requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal conversion statute was not intended to cover. *Gilliana,* 708 N.E.2d at 899. Treat also contends that his actions do not fit the definition of criminal conversion because he did not exert unauthorized control over SMI's property, *i.e.* the cabinets.

■ In the case at hand, we find that SMI failed to prove its prima facie case. In order to prevail on its claim for criminal conversion, SMI was required to prove that its property was converted by Treat and that Treat was acting with a mens rea of criminal intent. As stated in the March 20, 2002 Summary Judgment Order, there are genuine issues of material fact as to all of the material elements of SMI's claim against Treat brought under I.C. § 34–24–3–1 except for one, and that is the requirement that SMI prove it had either an ownership or a possessory right to the cabinets at the times relevant to its claim. The designated facts indicate that SMI placed an order for cabinets with Gruda Enterprises. The cabinets were to be delivered and installed at a location designated by SMI. This location was a new home that SMI was building.

Further, the record indicates that SMI paid for the kitchen cabinets in full as well as for the delivery and installation, on March 14, 1998. However, the record shows that no cabinets were ever delivered to, or installed for SMI by Gruda Enterprises. The goods were delivered to the Gruda Enterprises warehouse sometime after March 14, 1998. A representative of Gruda Enterprises called SMI to arrange a time for delivery and installation of the

cabinets, but SMI was not ready for the cabinets at the time of that call for delivery, so SMI was to notify Gruda Enterprises when it was ready for both delivery and installation. Unfortunately, in the interim, Gruda Enterprises closed and the Grudas filed personal bankruptcy. At this time, a representative of SMI contacted Treat asking to enter the warehouse to obtain the cabinets that were ordered. Treat refused to allow entry. As a result, SMI reordered and repaid for replacement cabinets after Treat refused to turn over the cabinets ordered from and received by Gruda Enterprises.[6]

We find that SMI failed to show that Treat was knowingly or intentionally exerting unauthorized control over their cabinets. *See* I.C. § 35–43–4–3; *Gilliana,* 708 N.E.2d at 899. As we discussed above, SMI does not have a possessory interest in the property. *See* I.C. § 26–1–2–401(2); I.C. § 26–1–2–401(2)(b). Furthermore, there is no evidence that the cabinets were ever removed from the warehouse by Treat. There is also no evidence that Treat converted the property. He did not have the required mens rea. *See Summit,* 690 N.E.2d at 727. Therefore, we conclude that the trial court properly granted summary judgment in favor of Treat.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted summary judgment in favor of Treat. *See Figg,* 646 N.E.2d at 71.

Affirmed.

MATTINGLY–MAY and ROBB, JJ., concur.

**D.P., Appellant–Defendant,**

**v.**

---

6. We note that Treat perfected a security interest in the accounts receivable, inventory, and equipment of The Kitchen Works on August 28, 1998.