Jason L. INLOW, Heather N. Johnson,
Jeremy H. Inlow and Sarah C. Inlow,
Appellants–Plaintiffs,

v.

Anita C. INLOW, Appellee–Defendant.

No. 29A02–0304–CV–284.

Court of Appeals of Indiana.

Oct. 23, 2003.

George T. Patton, Jr., Rhonda Yoder
Breman, Bose McKinney & Evans, LLP,
Ronald B. Brodey, Bleecker Brodey & An-
drews, Marvin J. Frank, Robert M. Ham-

lett, Frank & Kraft, Indianapolis, IN, Attorneys for Appellants.

Jack G. Hittle, Church, Church, Hittle & Antrim, Noblesville, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Jason L. Inlow, Heather N. Johnson, Jeremy H. Inlow, and Sarah C. Inlow (collectively, the "Inlow Children") appeal the trial court's grant of summary judgment in favor of Appellee–Defendant, Anita C. Inlow (Anita).

We affirm.[1]

### ISSUES

The Inlow Children raise two issues on appeal, which we consolidate and restate as the following issue: whether the trial court properly granted summary judgment in favor of Anita.

### FACTS AND PROCEDURAL HISTORY

Lawrence W. Inlow (Inlow) died intestate on May 21, 1997. Inlow was survived by the Inlow Children, who are the children of his first marriage; his second wife, Anita; and one minor child from his marriage to Anita. Following Inlow's death, Karl Kindig (Kindig) was appointed personal representative of the Inlow Estate (the Estate). Between January of 1998 and March of 1999, the Estate made distributions to Anita and each of Inlow's five children. On March 11, 1999, Kindig, the Estate's legal counsel and accountants met with Anita's legal counsel, the accountant

for Anita and her minor child, legal counsel for the Inlow Children, and accountants for the Inlow Children to discuss a proposal for the Estate to make a partial distribution to Anita. In addition, the representatives discussed the tax implications of the proposed partial distribution to Anita.

Pursuant to this March 11, 1999 meeting, the representatives agreed that Anita would receive a partial distribution of $18 million. Further, the representatives agreed that Kindig would exercise what is known as the 65–Day Rule, which would result in Anita paying any income taxes attributable to the $18 million. On March 26, 1999, in accordance with the agreement, Kindig petitioned the court presiding over the Estate (the "Estate court") for the authority to make a partial distribution of $18 million to Anita. On the same date, the Estate court signed the Order prepared by Kindig authorizing the distribution. The money was subsequently distributed to Anita. Thereafter, Kindig decided that the Estate would pay the income taxes attributable to the $18 million and not Anita. The Inlow Children, Anita and Anita's minor child were not aware of Kindig's decision until they received Estate-related tax information towards the end of 1999.

On November 9, 2001, the Inlow Children filed their Complaint against Anita in the Hamilton County Superior Court. The Complaint charged Anita with Count I, unjust enrichment; Count II, conversion pursuant to Ind.Code § 35–43–4–3; and Count III, conversion pursuant to I.C. § 35–43–4–3 due to Anita's alleged failure to make restitution after a demand was made therefore.[2] On November 27, 2001, Anita filed her Answer to Complaint, Affir-

---

1. Appellants' Motion for Oral Argument is hereby denied.

2. The Complaint also included Count IV against Anita's minor child, J.A., that was later dismissed and is not at issue here.

mative Defenses, and Counterclaim (Answer).

On June 14, 2002, Anita filed her Motion for Partial Summary Judgment. On December 27, 2002, the Inlow Children filed their Motion for Partial Summary Judgment on Count I of the Complaint, Memorandum in Support of Inlow Children's Motion for Partial Summary Judgment and in Opposition to [Anita's] Motion for Partial Summary Judgment. Anita filed her response on January 27, 2003.

On July 12, 2002, the trial court heard oral argument concerning discovery disputes between the parties. On February 7, 2003, the trial court heard oral argument on the parties' respective motions for partial summary judgment. On March 10, 2003, the trial court issued its Order granting full summary judgment on Counts I, II, and III in favor of Anita and against the Inlow Children. In its Order, the trial court made the following findings of fact and conclusions of law:

### FACTS

Both parties have asked this [c]ourt for Summary Judgment as to Count I, and both parties have informed the [c]ourt that there are no contested issues of fact as to Count I. The parties agree that [Kindig], in his capacity of Personal Representative of the [Estate], filed a Verified Petition for Authority to Make a Partial Distribution. (Kindig's Petition). His Petition was filed on March 26, 1999. The filing of this Petition followed a meeting with accountants and attorneys of the two sets of heirs, and [Kindig] and his professional team, at which time it was determined that [Kindig] would make a partial distribution of $18 million to [Anita], the surviving spouse of the decedent. [ ].

As a result of the meeting [on March 11, 1999], prior to the filing of Kindig's Petition on March 26, 1999, all parties understood that, as of that time, [Kindig] intended to make an election on the fiduciary income tax return in connection with the distribution, which election would have resulted in the income tax for the distribution being attributable to and payable by the recipient, [Anita]. Although Kindig's Petition cited, in rhetorical paragraph 10, that it would be in the best interest of the Estate that the distribution be deemed, for fiduciary income tax purposes, as a transaction attributable to the prior fiscal year, the Petition did not seek specific approval or direction as to the requirement that the Personal Representative make the election relative to the taxability of the distribution. However, as of that time, all parties assumed and expected he would make the election. On March 26, 1999, the same day as the Petition was filed, the [c]ourt granted the request to make the partial distribution. [ ].

The [c]ourt Order authorized the distribution, but did not otherwise make any direction as to whether [Kindig] should or should not make the election on the income tax return. The Order merely authorized him to make the distribution in a timely fashion, which would have allowed him to make the election if he desired to do so.

It is further agreed by the parties that following the March 26, 1999 Order, [Kindig] unilaterally decided not to make the election. His decision was "unilateral" in that he did not inform either set[ ] of heirs as to his decision. His decision was made after he consulted his professional advisors. It was later in that year, sometime prior to the November 15, 1999 tax filing deadline (the original filing date had been extended) that [Kindig] made his unilateral decision. There was no evidence as to

why he chose not to inform either set of heirs as to his decision. His decision was not known until the heirs received their official and final "K–1" income tax form from [Kindig].

In support of [Anita's] Motion for Summary Judgment, she submitted the Affidavit of [Kindig]. In this Affidavit, [Kindig] states the reasons for his decision not to make the tax election. His Affidavit states that prior distributions to Anita and the children had been done on a pro rata basis, without adjustment for the federal estate tax, and that, upon reflection, and upon the advice of his professional advisors, he determined that it would in fact be unfair to cause [Anita] to pay the income tax on this distribution. Apparently after the March 26, 1999[c]ourt Order, the accountants and professional advisors realized that there would not be sufficient income in the future to allow an equalization of this $18 million and future distributions. The [c]ourt also notes that in [Kindig's] Petition [ ], that he recites other partial distributions which took place prior to the $18 million distribution in question. He also specifically noted that this was only *one* of a series of distributions "for the purpose of aligning the interest of the heirs." [ ] In his Petition, [Kindig] also notes that after the $18 million distribution in question, that the Estate would remain solvent with assets in excess of $54 million.

In support of their Motion for Summary Judgment, the Inlow Children submitted the Affidavit of Thomas J. Sponsel. Mr. Sponsel is the accountant for the Inlow Children. Mr. Sponsel's Affidavit indicates his review was based upon the information presented at the meeting which preceded the March 26, 1999 Petition, and his review of the tax returns. Mr. Sponsel did not state any facts relative to the consideration of the impact of prior distributions, or the allocation of tax or deductions as they may relate to prior distributions, nor did his Affidavit speak to any impact of future distributions, including the final distribution, from the Estate.

## MOTION TO STRIKE AFFIDAVIT OF THOMAS J. SPONSEL

The Inlow Children tendered the Affidavit of Thomas J. Sponsel in support of their Motion for Partial Summary Judgment. [Anita] filed a Motion to Strike the Affidavit of Thomas J. Sponsel. The [c]ourt finds that Paragraphs 18 and 19 of Thomas J. Sponsel's Affidavit should be stricken because they do not comply with Trial Rule 56(E). The statements contained in rhetorical paragraphs 18 and 19 of the Affidavit are conclusions and opinions, and are not proper statements to remain in the Affidavit for purposes of Motion for Summary Judgment. The Motion to Strike is granted as to Paragraphs 18 and 19 of the Affidavit.

## COUNT I

1. The [Inlow Children] contend that the mere receipt by [Anita] of this partial distribution, and the mere fact that she was not obligated to pay income tax on it, in and of itself constitutes unjust enrichment. They make this argument because this consequence is different than the consequence everyone assumed and understood at the pre-March 26, 1999 meeting. The Inlow Children believe that this [c]ourt can make a determination that the receipt of these funds, in light of their mutual understanding after the meeting, in and of itself, is unjust enrichment, and that this [c]ourt should not consider the impact of any other prior or future distributions in

that determination. Anita contends that this single partial distribution cannot be looked at as a free-standing transaction, and that this [c]ourt cannot make a determination that this one (1) transaction constitutes unjust enrichment.

2. The [c]ourt finds that [Kindig] did intend to make the election, and that all parties relied on that intention. The [c]ourt also finds and believes that [Kindig] later changed his mind, and, unfortunately, for whatever reason did not communicate that to either of these parties. However, the mere fact [Kindig] changed his mind does not necessarily make the result unfair. [Kindig] has stated clearly in his Affidavit why he changed his mind, and why it would have been unfair *not* to change his mind. The Inlow Children have presented no facts to refute the reason for his decision.

3. The [c]ourt takes judicial notice of the fact that this [E]state remains open in this [c]ourt, under a separate cause number, and under the jurisdiction of Special Judge, Steve Nation.

4. Because the Estate remains open, and no final accounting has yet been filed, and because there are still assets to be distributed to both sets of heirs, neither this [c]ourt, nor anybody else, can conclude whether this one distribution was just or unjust. Furthermore, Judge Nation can still address any issues relating to fairness or equity in the [E]state case.

5. As to the existing action, the facts are undisputed that the person having the right to make the decision determined it would not be fair to make the election, and acted accordingly. This [c]ourt has no basis to second guess his decision. Therefore, the [c]ourt finds that the defendant, [Anita], should be entitled to summary judgment as to Count I of the [Inlow Children's] Complaint.

6. The Inlow Children contend that they have the right to bring this action at this time, because of the Assignment of Claims, resulting from a mediated settlement. [ ]. While the [c]ourt recognizes the existence of the Assignment, the mere fact that they had the right to pursue this claim, provides no facts as to whether or not the substantive claim should prevail.

. . . . [3]

The [c]ourt therefore makes these findings and conclusions, and determines that [Anita] is entitled to summary judgment in her favor as to Count I.

## COUNT II

1. The [Inlow Children] contend [Anita] is guilty of conversion by failing to pay to them the sum of $6,858, 261, which they contend is the Estate's payment of the income tax in question in this matter.

2. The [c]ourt finds there are no elements of conversion present to support their theory.

3. First, the [c]ourt has determined that the receipt of these funds by [Anita] does not constitute unjust enrichment, and therefore, upon the [Inlow Children's] own theory, the claim for conversion fails.

4. Even if this [c]ourt had found that the receipt of these funds by [Anita] somehow constituted unjust enrichment, the [c]ourt could not find that her receipt of these funds, pursuant to a[c]ourt

**3.** In the trial court's Order, paragraph 7 is crossed out with a pen, and the word "omit" and the trial judge's initials "SD" are written next to the section to be omitted. Accordingly, we have omitted paragraph 7 from our opinion.

Order, constitutes unjust enrichment. In support of their argument, the Inlow Children rely heavily on the case of [*Dominiack Mechanical, Inc. v. Dunbar*, 757 N.E.2d 186 (Ind.Ct.App.2001)]. This case is distinguishable from *Dominiack* for several reasons, primarily because there is no underlying tort in this matter as there was in *Dominiack*. In this case, under any circumstances, there was no initial misappropriation of the personal property of another. [The Inlow Children's] reliance on *Dominiack* is misplaced.

5. The defendant, [Anita], is entitled to summary judgment in her favor as to Count II of [the Inlow Children's] Complaint.

### COUNT III

1. Count III of the [Inlow Children's] Complaint incorporates the underlying theories of unjust enrichment and conversion, and seeks to attach another theory to their claim, that being the theory of failure to make restitution. This theory also fails. The Inlow Children's basis for their claim of restitution rests upon a "demand letter" they sent to [Anita], asking her to voluntarily pay the $6,858,261 to them. Anita's failure to agree with their request can hardly be characterized as a failure to make restitution. Here again, even if the [c]ourt were inclined to find that the [Inlow Children] were entitled to judgment on their theory of unjust enrichment, Anita's failure to agree with that cannot constitute a failure to make restitution. [Anita] is entitled to summary judgment in her favor on [Count] III of the [Inlow Children's] Complaint.

### SUMMARY JUDGMENT

The [c]ourt now incorporates by reference all of the foregoing findings and conclusions, and finds that [Anita] is entitled to judgment in her favor on Counts I, II, and III of the [Inlow Children's] Complaint, and finds that the [Inlow Children] shall take nothing by way of their Complaint. The [c]ourt further finds the [Inlow Children] are not entitled to summary judgment on their Motion as to Count I.

(Appellant's App. pp. 13–22).

The Inlow Children now appeal. Additional facts will be supplied as necessary.

### DISCUSSION

#### I. *Standard of Review*

In reviewing the propriety of a trial court's ruling of summary judgment, we apply the same standard as the trial court. *Schoknecht v. Hasemeier*, 735 N.E.2d 299, 301 (Ind.Ct.App.2000). We do not reweigh the evidence designated by the parties. *Id.* Instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate only if the pleadings and evidence show: 1) the absence of a genuine issue of material fact, and 2) the moving party is entitled to judgment as a matter of law. *Id.* at 301–02. A trial court's grant of summary judgment is "clothed with a presumption of validity." *Id.*

■ In the instant case, the trial court entered specific findings of fact and conclusions of law. Although specific findings of fact and conclusions of law offer valuable insight into the trial court's rationale for the judgment and facilitate our review, they are not binding on this court. *Mendenhall v. City of Indianapolis*, 717 N.E.2d 1218, 1224 (Ind.Ct.App.1999), *trans. denied.* Instead, summary judgment will be affirmed if it is sustainable on any theory or basis found in the evidentia-

ry matter designated to the trial court. *Figg v. Bryan Rental, Inc.*, 646 N.E.2d 69, 71 (Ind.Ct.App.1995), *reh'g denied, trans. denied.*

## II. *Unjust Enrichment*

■ The Inlow Children assert that the trial court erred in granting summary judgment in favor of Anita on their claim of unjust enrichment. The Inlow Children argue that, instead, they are entitled to summary judgment in their favor because the undisputed facts establish their claim.

■ "To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992). The Inlow Children contend that they should have prevailed in their claim because: (1) Anita received an $18 million distribution from the Estate, (2) prior to the distribution, the parties agreed and understood that Anita, not the Estate, would pay any income taxes attributable to the distribution, (3) nevertheless, Kindig unilaterally elected to have the Estate pay the income taxes, saving Anita more than $6.8 million, and (4) Anita's retention of this tax savings diminishes "the heirs' interests in the Estate" and, therefore, constitutes unjust enrichment. (Appellant's Br. p. 14).

In support of their argument, the Inlow Children rely on *Dominiack Mechanical, Inc. v. Dunbar*, 757 N.E.2d 186 (Ind.Ct. App.2001). *Dominiack* involved a woman who used embezzled funds to pay for a skybox party for a group of friends at a Chicago Bulls basketball game. The woman organized the trip to Chicago, rented the skybox, had food and drinks catered to the party and provided transportation for the people attending the party. After attending the party, the partygoers were informed of the woman's misdeeds and were asked to pay plaintiffs a pro-rata share of the cost of the party. When the partygoers refused, they were named as defendants in the plaintiffs' Complaint under theories of conversion and unjust enrichment. Pursuant to Indiana Trial Rule 12(B)(6), the trial court dismissed the allegations of conversion and unjust enrichment. On appeal, this court determined that the allegations in the appellants' Complaint "*might* permit evidence under which Dominiack could recover on a claim of unjust enrichment," even though Dominiack's Complaint made no allegation that the defendant partygoers were complicit in the embezzlement. *Dominiack*, 757 N.E.2d at 191 (emphasis added). We find the Inlow Children's reliance on *Dominiack* misplaced.

Whereas the defendants in *Dominiack* were allegedly enriched by partaking in a skybox party financed with ill-begotten funds, the distribution to Anita was made pursuant to statute and pursuant to a court order. Indiana Code section 29–1–2–1 entitles Anita, as Inlow's surviving spouse, to a fifty percent intestate share of the Estate. The four Inlow Children and Anita's minor child from her marriage to Inlow are entitled to equal shares of the remaining fifty percent of the Estate, which amounts to ten percent of the total Estate each. I.C. § 29–1–2–1. Because the Estate remains open, there has been no final accounting to determine whether any of Inlow's heirs have received distributions in excess of their intestate share. *See* I.C. § 29–1–17–2.

Further, as personal representative of the Estate, Kindig was statutorily charged with taking possession of "all the real and personal property of the decedent other

than allowances under I.C. § 29–1–4–1" and with paying the taxes and collecting the rents and earnings thereon "until the estate is settled or until delivered by order of the court to the distributees." I.C. § 29–1–13–1. Kindig petitioned the Estate court for permission to make the $18 million distribution to Anita.[4] Thereafter, the Estate court signed the Order prepared by Kindig that authorized the $18 million distribution to Anita. Despite the fact that, prior to the distribution, all parties agreed and understood that Anita would pay the income taxes attributable to the distribution, Kindig unilaterally decided to have the Estate pay the income taxes attributable to the $18 million distribution.

In his affidavit dated January 27, 2003, Kindig explained his decision as follows:

9. The distribution to Anita of the $18 million was made in time so that the Estate could make the election, if it desired, when the fiduciary income tax return was filed. An extension of time was sought for the filing of the Income Tax Return, thereby causing the Income Tax Return to be due (I believe) on November 15, 1999.

10. Before the due date I again met with my tax advisors and attorneys. At that time, Ernst & Young pointed out to me that it might not be fair or appropriate to elect to take the deduction on the Estate's income tax return pursuant to the 65 Day Rule. I was advised that, given the significant amount of taxable income received by the Estate during the year ended January 31, 1999, the entire amount of the distribution would be taxable to Anita if the Estate elected to use the 65 Day Rule. I was further advised that if the distribution was taxable to Anita, then she would have received distributions from the Estate that were taxable to her to a far greater extent than the children had received distributions that were taxable to them. Furthermore, it did not appear there would be sufficient taxable income for the remainder of the Estate administration to enable the Estate to adjust for this disproportionate impact in future distributions.

11. I relied on the advice of my advisors and decided not to make the election, which otherwise would have caused the partial distribution to be taxable, for income tax purposes to Anita.

12. At the time I had the relevant discussions with my accountants and legal advisors, I believed the information they provided me was true, and I relied upon their advice.

(Appellants' App. pp. 622–23).

We have previously observed that the pivotal concept of "unjust enrichment" is the occurrence of a wrong or something unjust. *Savoree v. Industrial Contracting & Erecting, Inc.*, 789 N.E.2d 1013, 1020 (Ind.Ct.App.2003). There is simply no evidence that Anita was *wrongfully* enriched at the expense of the Inlow Children. "Absent a wrong, intervention by equity is inappropriate." *Indianapolis Raceway*

---

4. We note that neither the petition nor the Order prepared by Kindig and signed by the Estate court judge make mention of the agreement reached at the March 11, 1999 meeting to have Anita pay the entire income tax liability attributable to the $18 million distribution. In fact, the Verified Petition for Authority to Make Partial Distribution only vaguely alludes to the 65–Day Rule in paragraph 10 as follows:

That it is in the best interest of the Estate that this distribution be deemed, for fiduciary income tax purposes, as a transaction attributable to the prior fiscal year of the Estate, which ended on January 31, 1999. In order to relate to the prior fiscal year of the Estate, the distribution must be approved by this [c]ourt and paid to [Anita] on or before April 5, 1999.

(Appellants' App. p. 37).

*Park, Inc., v. Curtiss,* 179 Ind.App. 557, 559, 386 N.E.2d 724, 726 (Ind.Ct.App. 1979). Consequently, we find that the trial court's grant of summary judgment in favor of Anita was appropriate regarding Count I, the claim for unjust enrichment. Likewise, the trial court committed no error in denying the Inlow Children's Motion for Partial Summary Judgment as to Count I.

### III. *Conversion*

■ Next, the Inlow Children argue that Anita's retention of the entire $18 million distribution constitutes conversion pursuant to I.C. § 35–43–4–3, and that they are entitled to damages under the Indiana Crime Victims Relief Act (I.C. § 34–24–3–1).

■ Under the Indiana Victims Relief Act, persons who suffer a pecuniary loss as a result of a violation of I.C. § 35–43, I.C. § 35–42–3–3, I.C. § 35–42–3–4, or I.C. § 35–45–9, may bring a civil action for damages against the defendant. I.C. § 34–24–3–1. Unlike the burden of proof in a criminal trial, a claimant "need only prove by a preponderance of the evidence that the criminal act was committed by the defendant." *White v. Indiana Realty Assoc. II,* 555 N.E.2d 454, 456 (Ind.1990). In addition, a criminal conviction is not required for recovery in a civil action brought under the Indiana Victims Relief Act. *Sam and Mac, Inc. v. Treat,* 783 N.E.2d 760, 766 (Ind.Ct.App.2003). However, all elements of the alleged criminal act must be proven by the claimant. *Id.*

The Inlow Children argue that the trial court committed three errors in its ruling on Counts II and III for conversion. First, they maintain there are genuine issues of material fact with regard to the claims of conversion; second, the trial court's conclusion that the claims were precluded because of its determination that Anita was not unjustly enriched was

incorrect; and third, the trial court misinterpreted Count III to be a claim for "failure to make restitution rather than an alternative claim of conversion." (Appellants' Br. p. 33). We find the Inlow Children's arguments unavailing.

Initially, we reiterate that we are not bound by the trial court's findings of fact and conclusions of law in our review of its grant of summary judgment in favor of Anita. *See Mendenhall,* 717 N.E.2d at 1224. Instead, we will affirm summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *See Figg,* 646 N.E.2d at 71.

Our review of the record shows that the Inlow Children fail to present a prima facie case with regard to either count of conversion alleged against Anita. Indiana Code section 35–43–4–3 provides: "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." However, in the case at bar, Kindig obtained a court Order permitting the $18 million distribution to Anita. Subsequently, Kindig distributed the money to Anita as authorized by the Estate court. Thus, Kindig's actions were in accordance with his statutory power and responsibility as set forth in I.C. § 29–1–13.

Likewise, the court-authorized distribution complied with I.C. 29–1–17–1(a), which provides:

> At any time during the administration, upon application of the personal representative or any distribute, with or without notice as the court may direct, the court may order the personal representative to deliver to any distribute, who consents to it, possession of any specific real or tangible personal property to which he is entitled under the terms of

the will or by intestacy, provided that other distributees and claimants are not prejudiced thereby. The court may at any time prior to the decree of final distribution order him to return such property to the personal representative if it is for the best interest of the estate. The court may require the distribute to give security for such return.

In acknowledgement of the above-cited subsection, Anita signed a "Receipt for Partial Distribution," which provided:

The undersigned hereby acknowledges receipt from the [Estate], of probate assets in the amount of Eighteen Million Dollars ($18,000,000) on April 5, 1999, in partial satisfaction of her intestate share of the Estate. The undersigned further acknowledges that the aforesaid distribution is conditional upon its return, or so much thereof as shall be necessary, in the event the remaining assets of the Estate are insufficient to satisfy all expenses, allowed claims and costs of administration.

(Appellants' App. p. 454). Therefore, with regard to both counts, we find that the evidence designated by the Inlow Children to the trial court fails to show that Anita "exerted unauthorized control" over their property as required by I.C. § 35–43–4–3.

In addition, the Inlow Children present no evidence that the money distributed to Anita was *their* property. As the surviving spouse, Anita's intestate share is half of her husband's net estate. *See* I.C. § 29–1–2–1. As discussed above, because there has been no final accounting of the Estate, the Inlow Children have not and are unable to demonstrate that distributions to Anita have exceeded her intestate share. *See* I.C. § 29–1–17–2. As a result, they present no evidence that the money retained by Anita was or should have been theirs. Consequently, the Inlow Children fail to make a prima facie showing of con-

version with regard to either count and, likewise, fail to raise any genuine issue of material fact to prevent a grant of summary judgment in Anita's favor. *See Schoknecht,* 735 N.E.2d at 301.

## CONCLUSION

Based on the foregoing, we conclude that the trial court's grant of summary judgment in favor of Anita and against the Inlow Children was proper. In addition, we find that the trial court committed no error in denying the Inlow Children's Motion for Partial Summary Judgment as to Count I.

Affirmed.

ROBB, J., concurs.

BAKER, J., concurs in result with opinion.

BAKER, Judge, concurring in result.

I concur in the result reached by the majority and agree that no unjust enrichment or conversion occurred. However, I write separately because I believe that this is not the proper forum to settle this dispute. As noted in our opinion, *Inlow v. Henderson, Daily, Withrow & DeVoe,* 787 N.E.2d 385, 391 (Ind.Ct.App.2003), matters concerning the estate of a deceased are entrusted to the probate court.

In the prior case, the Inlow Children had attempted to pursue a claim of legal malpractice against Henderson Daily, alleging that the Inlow estate had been damaged because of Henderson Daily's negligence. *Id.* at 390. We held that the trial court properly dismissed the Inlow Children's claims, noting that "the entire Probate Code—except provisions that permit dispensing with administration altogether—considers the personal representative the focal point of overseeing claims on behalf of the estate." *Id.* at 391. Furthermore, we held that "[t]he probate

court and the personal representative are in the best position to assess, among other things, the strength of a claim, the costs to the estate in pursuing it, and the desirability of closing the estate before certain assets depreciate in value." *Id.* at 399. Thus, it seems to me that the Inlow Children's claims should have been addressed to the probate court.

I note that this case was briefed subsequent to our opinion in *Henderson Daily* and was submitted after our decision to deny rehearing was issued on July 7, 2003. Thus, the Inlow Children's attorneys were on notice that the probate court was the proper forum in which to address these types of claims. Unless these attorneys have agreed to provide their services at no cost—if such is the case, I expect that the sun will rise in the west tomorrow—the morass of legal activity directed at Lawrence W. Inlow's estate simply amounts to the wanton depletion of the heirs' assets.

Thus, I would remand this case to the trial court with instructions that it transfer the same to the probate court and that it affix sanctions against counsel for the Inlow Children.