JET CREDIT UNION n/k/a Credit Union 1, Appellant/Counter–Defendant,

v.

John V. LOUDERMILK and Continental American Insurance Company, Appellees/Counter–Plaintiffs,

Geneva P. Loudermilk, Associated Property Services, Inc., Emily Corporation, Erin Corporation, Frazier Farms Limited, Geneva Life Insurance Company, Indiana Earthmoving Corporation, Jakester and Associates, Inc., and Harding Development Corporation, Appellees/Intervenors/Counter–Plaintiffs.

No. 49A04–0608–CV–475.

Court of Appeals of Indiana.

Jan. 22, 2008.

Christian P. Jones, Mark J. Crandley, Monica R. Brownewell Smith, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Hahn, Robert S. Daniels, Jason M. Massaro, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

Jet Credit Union believed John Loudermilk, a director and officer, committed "acts of malfeasance," (Br. of Appellant Jet Credit Union (hereinafter "Jet Br.") at 2), that caused Jet financial losses. Jet would not allow Loudermilk to withdraw the funds he had on deposit with Jet while it was trying to determine the extent of Loudermilk's financial liability to Jet. In a declaratory judgment the trial court determined Jet could not withhold the money,

and Jet released it. Loudermilk [1] later sued Jet for criminal conversion and obtained summary judgment. Because there is no genuine issue as to whether Jet acted with criminal intent,[2] we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In October of 2003, Jet sued Loudermilk, who had served as Jet's CEO, treasurer, and board member. It alleged "several instances of misconduct and financial improprieties" that caused harm to Jet. (App. at 45.) As part of its complaint Jet sought a declaratory judgment that it could prevent Loudermilk from withdrawing funds he had in Jet accounts until the malfeasance claims were resolved.

Jet believed the losses Loudermilk caused were in excess of the amount of his deposits with Jet. Jet sought the declaratory judgment after it asked the Indiana Department of Financial Institutions ("DFI") for an opinion as to whether it could prohibit Loudermilk from withdrawing the funds. DFI opined if the directors of a credit union believe an individual owes money to the credit union, "it has the statutory right to not pay the member his or her shares until such amount is no longer due." (*Id.* at 1072.)

Loudermilk answered the complaint but asserted no counterclaims. Entities that held Jet accounts jointly with Loudermilk intervened but did not file answers, counterclaims, or other pleadings. Jet amended its complaint on March 16, 2004, and again on April 16, 2004, but the declaratory judgment claim did not change. On May 17, 2004, the trial court found for Loudermilk on the declaratory judgment question and ordered the immediate release of his funds. Jet did not appeal that ruling, and it paid Loudermilk the money, with interest, four days later.

Some four months after Jet had repaid the money, Loudermilk and the intervenors filed a counterclaim for conversion. They alleged Loudermilk demanded release of the funds on August 19, 2003, but Jet did not release the funds.[3] In July 2006, the parties filed cross-motions for summary judgment on the conversion issue and the trial court granted Loudermilk's motion. It found Jet had committed criminal conversion "in violation of I.C. 35–43–4–1," [4] (*id.* at 35), and found Louder-

1. A number of intervenors joined this litigation, mostly persons or entities that held Jet accounts jointly with Loudermilk. They will be referred to collectively as "Loudermilk."

2. Because Jet had no criminal intent, we need not address its alternative arguments Loudermilk suffered no loss as Jet released his money to him before he brought the conversion action, the amount of the award was erroneous, and Loudermilk's criminal conversion claim was barred because it should have been brought as a compulsory counterclaim to the declaratory judgment action.

3. As Jet had in fact released the funds, the counterclaim presumably was premised on Jet's failure to release the finds within sixty days after Loudermilk's demand. *See* Ind. Code § 28–7–1–26 ("A credit union may re-

quire sixty (60) days notice in writing for any withdrawal."). On appeal, Loudermilk's only acknowledgement in his Statement of Facts or Statement of the Case that the money had been released to him well before he brought his counterclaim is the final sentence in his Statement of Facts: "Jet only released the funds to Counter–Plaintiffs after receipt of the Court Order." (Br. of Appellees, *John v. Loudermilk, et al.* (hereinafter "Loudermilk Br.") at 9.)

4. That section does not establish an offense for which there can be a "violation." Rather, it defines certain terms, including "exert control over property" and "unauthorized." The trial court was presumably referring to Ind. Code § 35–43–4–3, which provides in pertinent part: "A person who knowingly or intentionally exerts unauthorized control over

milk and the intervenors had "suffered a pecuniary loss" (*id.* at 37) of $1,008,942.20, the amount the accounts were worth on August 19, 2003 when Loudermilk resigned. It awarded Loudermilk treble damages of $3,026,826.60, prejudgment interest of $60,663.02 that it also trebled to $181,989.06, and attorney fees of $170,326.85.

## DISCUSSION AND DECISION

▉ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rhoades v. Heritage Invs., LLC,* 839 N.E.2d 788, 791 (Ind.Ct.App.2005), *trans. denied* 860 N.E.2d 584 (Ind.2006). The fact that the parties filed cross-motions for summary judgment does not alter our standard of review; we must consider each motion separately to determine whether the undisputed facts entitle either party to judgment as a matter of law. *Highhouse v. Midwest Orthopedic Institute, P.C.,* 782 N.E.2d 1006, 1010 (Ind.Ct.App.2003), *vacated on other grounds* 807 N.E.2d 737 (Ind.2004). If our review of the record discloses an incorrect application of the law to the undisputed facts, then we must reverse the grant of summary judgment. *Id.*

▉ A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion. Ind.Code § 35–43–4–3. A person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss. *Sam & Mac, Inc. v. Treat,* 783 N.E.2d 760, 766 (Ind.Ct.App.2003). Unlike in a criminal trial, a claimant need prove by only a

preponderance of the evidence that the defendant committed the criminal act; a criminal conviction of conversion is not a condition precedent to recovery in the civil action. *Id.*

▉ However, the claimant, here Loudermilk, must prove all the elements of the alleged criminal act. *Id.* In any criminal conversion action, criminal intent is an essential element that must be proven. *Id.* It is this *mens rea* requirement that differentiates criminal conversion from a more innocent breach of contract or failure to pay a debt, which situations the criminal conversion statute was not intended to cover. *Id.* To establish this element of the crime of conversion, a plaintiff must show the defendant was aware of a high probability his control over the plaintiff's property was unauthorized. *Manzon v. Stant Corp.,* 138 F.Supp.2d 1110, 1116 (S.D.Ind. 2001).

Jet was not aware of a high probability its control over Loudermilk's property was unauthorized, and therefore did not have criminal intent, because it had been advised by DFI it was authorized to retain the money. Jet directs us to decisions it characterizes as standing for the proposition "persons have a right to rely on legal interpretations by government officials without running afoul of criminal conversion and similar laws." (Jet Br. at 18.) We decline Jet's invitation to adopt so broad a holding.

The decisions Jet cites involve more than mere "legal interpretations" by government officials. For example, in *Dexter v. Depository Trust and Clearing Corp.,* 406 F.Supp.2d 260, 264–65 (S.D.N.Y.2005), *aff'd* 219 Fed.Appx. 91 (2d Cir.2007), the court held:

property of another person commits criminal conversion, a Class A misdemeanor." Under Ind.Code § 34–24–3–1, a person who suffers a pecuniary loss as a result of a violation of Ind.Code article 35–43 may bring a civil ac-

tion against the person who caused the loss for "[a]n amount not to exceed three (3) times the actual damages of the person suffering the loss," the costs of the action, and a reasonable attorney's fee.

As a matter of law, the DTC defendants cannot have breached any duty of due care by executing a distribution in accordance with *governing directives* of the regulatory agency responsible for directing its activities. Nor can the DTC defendants be found to have converted plaintiff's property, since their actions, taken in reliance on the authority of such an agency, are privileged.

(Emphasis supplied.) That court also noted "An act which would otherwise constitute conversion is privileged when it is committed pursuant to *a court order* valid on its face." *Id.* at 265 (emphasis supplied).

Jet did not withhold Loudermilk's funds in compliance with a "governing directive" or court order, and we decline to hold a "privilege" such as that recognized in *Dexter* necessarily arises when an action is taken in reliance on a mere opinion provided by a government agency. However, Jet's reliance on the advice DFI gave it regarding Loudermilk's accounts does serve to negate its criminal intent.

Loudermilk characterizes the letter from DFI as "irrelevant." (Br. of Appellees, *John v. Loudermilk, et al.* (hereinafter "Loudermilk Br.") at 21.) He asserts "[t]he DFI does not have authority to interpret a statute. I.C. 28–11–4 *et seq.* limits the DFI's powers to *enforcement* powers and not *interpretation* powers.... The DFI clearly overstepped its authority." [5] (*Id.*) (emphasis in original).

■ We disagree. Administrative agencies enjoy broad authority to interpret and enforce pertinent statutes. *Indiana Alcoholic Beverage Comm'n v. 21st Amendment, Inc.*, 626 N.E.2d 590, 593 (Ind.Ct.App.1993), *trans. denied. And see Ind. Wholesale Wine & Liquor Co., Inc. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 105 (Ind.1998) (noting the policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes, and increasing public reliance on agency interpretations). "Interpretation of a statute is a necessary and inherent function of an agency in its administration or application of that statute." *Dean v. State*, 250 Kan. 417, 826 P.2d 1372, 1376 (1992), *cert. denied sub nom. Zarda v. Kansas*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992). We acknowledge nothing in Ind.Code chapter 28–11–4 explicitly authorizes DFI to interpret a statute, nor did the legislature explicitly prohibit it from doing so. Nevertheless, we decline Loudermilk's invitation to hold an administrative agency necessarily "oversteps its authority" anytime it interprets a statute, even if it does not have explicit legislative authorization. In light of DFI's interpretation of the statute, Jet could not have been aware of a high probability its control over Loudermilk's money was unauthorized. It therefore had no criminal intent.

Summary judgment for Loudermilk was improper because the designated evidence demonstrates Jet lacked criminal intent. We accordingly reverse and remand for entry of summary judgment in favor of Jet.

Reversed and remanded.

SHARPNACK, J., and BAILEY, J., concur.

---

**5.** The *mens rea* question before us is not resolved by measuring DFI's actual authority to interpret its governing statutes. Rather, we address the effect DFI's opinion had on whether Jet was aware of a high probability its control over Loudermilk's money was unauthorized.

As a matter of law, the DTC defendants cannot have breached any duty of due care by executing a distribution in accordance with *governing directives* of the regulatory agency responsible for directing its activities. Nor can the DTC defendants be found to have converted plaintiff's property, since their actions, taken in reliance on the authority of such an agency, are privileged.

(Emphasis supplied.) That court also noted "An act which would otherwise constitute conversion is privileged when it is committed pursuant to *a court order* valid on its face." *Id.* at 265 (emphasis supplied).

Jet did not withhold Loudermilk's funds in compliance with a "governing directive" or court order, and we decline to hold a "privilege" such as that recognized in *Dexter* necessarily arises when an action is taken in reliance on a mere opinion provided by a government agency. However, Jet's reliance on the advice DFI gave it regarding Loudermilk's accounts does serve to negate its criminal intent.

Loudermilk characterizes the letter from DFI as "irrelevant." (Br. of Appellees, *John v. Loudermilk, et al.* (hereinafter "Loudermilk Br.") at 21.) He asserts "[t]he DFI does not have authority to interpret a statute. I.C. 28–11–4 *et seq.* limits the DFI's powers to *enforcement* powers and not *interpretation* powers.... The DFI clearly overstepped its authority." [5] (*Id.*) (emphasis in original).

■ We disagree. Administrative agencies enjoy broad authority to interpret and enforce pertinent statutes. *Indiana Alcoholic Beverage Comm'n v. 21st Amendment, Inc.*, 626 N.E.2d 590, 593 (Ind.Ct.App.1993), *trans. denied. And see Ind. Wholesale Wine & Liquor Co., Inc. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 105 (Ind.1998) (noting the policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes, and increasing public reliance on agency interpretations). "Interpretation of a statute is a necessary and inherent function of an agency in its administration or application of that statute." *Dean v. State*, 250 Kan. 417, 826 P.2d 1372, 1376 (1992), *cert. denied sub nom. Zarda v. Kansas*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992). We acknowledge nothing in Ind.Code chapter 28–11–4 explicitly authorizes DFI to interpret a statute, nor did the legislature explicitly prohibit it from doing so. Nevertheless, we decline Loudermilk's invitation to hold an administrative agency necessarily "oversteps its authority" anytime it interprets a statute, even if it does not have explicit legislative authorization. In light of DFI's interpretation of the statute, Jet could not have been aware of a high probability its control over Loudermilk's money was unauthorized. It therefore had no criminal intent.

Summary judgment for Loudermilk was improper because the designated evidence demonstrates Jet lacked criminal intent. We accordingly reverse and remand for entry of summary judgment in favor of Jet.

Reversed and remanded.

SHARPNACK, J., and BAILEY, J., concur.

---

**5.** The *mens rea* question before us is not resolved by measuring DFI's actual authority to interpret its governing statutes. Rather, we address the effect DFI's opinion had on whether Jet was aware of a high probability its control over Loudermilk's money was unauthorized.