**FRENCH–TEX CLEANERS, INC.,**
Appellant–Plaintiff,

v.

**CAFARO COMPANY and Towne
Management Company,**
Appellees–Defendants.

No. 18A05–0712–CV–699.

Court of Appeals of Indiana.

Sept. 30, 2008.

William T. Rosenbaum, Hyatt & Rosenbaum, P.A., Indianapolis, IN, Attorney for Appellant.

Kevin R. Knight, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

KIRSCH, Judge.

French–Tex Cleaners, Inc. ("French–Tex") brings this interlocutory appeal of the trial court's grant of summary judgment: (1) in favor of Cafaro Company ("Cafaro") on French–Tex's breach of contract and conversion claims; and (2) in favor of Towne Management Company ("Towne") on French–Tex's conversion claim. Towne brings an interlocutory cross-appeal on the trial court's grant of summary judgment in favor of French–Tex on French–Tex's breach of contract claim. The parties raise the following restated issues:

I. Whether the trial court erred in granting summary judgment in favor of French–Tex on its breach of contract claim against Towne.

II. Whether the trial court erred in granting summary judgment in favor of Towne on French–Tex's conversion claim.

III. Whether the trial court erred in granting summary judgment in favor of Cafaro on French–Tex's claims for breach of contract and conversion.

We affirm in part, reverse in part, and remand.[1]

## FACTS AND PROCEDURAL HISTORY

French–Tex is an Indiana corporation that, from 1962 to 2002, ran a dry cleaning and laundry business out of two units of commercial space located in the Northwest Plaza Shopping Center in Muncie, Indiana (the "Plaza"). French–Tex, as tenant, entered into a separate lease agreement with Towne, as landlord, to rent Unit 9 and Unit 14 in the Plaza. The leases at issue were executed on January 7, 1995, amended twice (once on March 14, 1998 and again on January 7, 2000), and expired on March 31, 2002. *Appellant's App.* at 37, 86, 90, 95, 137, 141. The contract language pertinent to this appeal was identical in both leases and was not changed by the 1998 or 2000 amendments. Therefore, we refer to the two leases collectively as the "Lease."

Under the terms of the Lease, French–Tex agreed to pay its pro rata share of the "Real Estate Tax Expense." Clause 10 of the Lease ("Clause 10") defined this term to mean, "all real estate taxes and assessments . . . imposed" on the Plaza. *Id.* at 47, 104. The term included "the gross amount of real estate taxes," but could not be increased by additional penalties or charges incurred by the Landlord or decreased by any reduction or abatement received by Landlord due to early payment of real estate taxes or otherwise. *Id.*

Twice a year, Towne received from Delaware County, Indiana, a tax statement setting forth the real estate taxes due for the Plaza. The tax statement included the following information: (1) parcel number; (2) tax rate; (3) assessed valuation of the land and improvements; (4) exemptions; (5) net valuation (assessed valuation minus exemptions); (6) current taxes[2] (the product of the net valuation times the tax rate); (7) property tax replacement credit ("PTRC");[3] (8) net current taxes[4] (the difference between the current taxes minus the replacement credit); (9) the ditch assessment; and (10) the amount to pay (net current tax plus ditch assessment). *Id.* at 423–29. While Towne paid the Delaware County Treasurer the sum listed as "amount to pay," Towne billed French–Tex for a pro rata share of the sum of the "current taxes" plus the ditch assessment. Stated differently, Towne calculated the taxes of the Plaza by adding the ditch assessment to the product of "the assessed value [of the land and improvements]

---

1. We held oral argument in Indianapolis on August 12, 2008. We commend counsel on their oral and written advocacy.

2. In 2002, the tax statement form was changed and the category "Current Taxes" was renamed "1/2 Year Gross Tax." *Appellant's App.* at 423.

3. The PTRC is a credit applied to reduce a taxpayer's overall property tax liability. IC 6–1.1–21–5. IC 6–1.1–21–5(a) provides:

 Each year the taxpayers of each county shall receive credit for property tax replace-

ment in the amount of each taxpayer's property tax replacement credit amount for taxes. . . . The credit shall be applied to each installment of taxes. The dollar amount of the credit for each taxpayer shall be determined by the county auditor, based on the data furnished by the department of local government finance.

4. The 2002 change in the tax statement form also changed the heading "Net Current Taxes" to "Net this Installment." *Appellant's App.* at 423.

times the tax rate, without deducting for the [PTRC]." *Appellant's Br.* at vi.

Towne did not send French–Tex a copy of the tax statement it received; instead, it sent French–Tex an invoice setting forth the taxes French–Tex owed. *Appellant's App.* 394–422. French–Tex assumed it was paying only its pro rata share of the taxes Towne actually had to pay. French–Tex learned, after the Lease expired, that it had not received credit for the PTRC. Thereafter, on January 29, 2003, French–Tex filed a Class Action Complaint claiming that Towne and Cafaro, who as explained more fully below appeared to have an ownership interest or business relationship with Towne, had overcharged French–Tex and other commercial tenants of multiple shopping centers for their respective shares of property tax. *Id.* at 23–36.

While not a party to the Lease, Cafaro was named as a party to the suit based on the following relationship with Towne: (1) Towne and Cafaro leased office space in the same Youngstown, Ohio building and shared computer and telephone systems; (2) Towne and Cafaro shared some officers; (3) the invoices sent to French–Tex by Towne were actually prepared by employees of Cafaro; (4) Cafaro paid the Plaza's real estate taxes to the Delaware County Treasurer every six months from a Cafaro checking account; (5) Cafaro paid the Plaza's tax advisory fees to Warner Management; and (6) Cafaro handled other significant management issues, including sending three lease-related letters to French–Tex. *Id.* at 327–28, 368–70, 373–92.

In its complaint, French–Tex asserted four claims-breach of contract, conversion, unjust enrichment, and fraud. *Id.* at 23–36. Towne and Cafaro filed separate answers to the complaint. *Id.* at 150, 159. Additionally, Towne counterclaimed

against French–Tex for breach of contract, seeking reimbursement for certain repair and clean-up costs incurred by Towne during French–Tex's lease of Units 9 and 14. *Id.* at 166–71. The trial court has yet to make a ruling on Towne's counterclaim, which must be decided on remand.

On February 26, 2003, Towne and Cafaro filed a motion to dismiss, which the trial court denied four months later. *Appellees' App.* at 1–19, 20–24. During the ensuing years, the parties filed various motions; however, the trial court took no significant action until February 2007, when it denied French–Tex's petition for class certification.

On June 13, 2007, Towne and Cafaro moved for summary judgment on all four of French–Tex's claims. In response, French–Tex filed a motion for partial summary judgment on its contract and conversion claims and voluntarily dismissed, without prejudice, its claims for unjust enrichment and fraud. On November 15, 2007, the trial court entered its order and granted summary judgment: (1) in favor of Towne on French–Tex's claim of conversion; (2) in favor of Cafaro on French–Tex's breach of contract and conversion claims; and (3) in favor of French–Tex and against Towne on French–Tex's breach of contract claim. *Appellant's App.* at 19–22. Both sides moved to certify the order for interlocutory appeal, and the trial court granted both motions. The parties now appeal.

## DISCUSSION AND DECISION

When reviewing a summary judgment ruling, this court stands in the shoes of the trial court and does not weigh the evidence, but merely construes the pleadings and designated materials in a light most favorable to the non-movant. *Tobin v. Ruman*, 819 N.E.2d 78, 83–84 (Ind.Ct.App. 2004), *trans. denied* (2005). Summary

judgment is appropriate when the pleadings, affidavits, testimony, and products of discovery demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). A factual issue is genuine if it cannot be foreclosed by reference to undisputed facts. *Jones v. City of Logansport,* 436 N.E.2d 1138, 1143 (Ind.Ct.App.1982). A fact is material if it affects the outcome of the litigation. *Costello v. Mut. Hosp. Ins. Inc.,* 441 N.E.2d 506, 508 (Ind.Ct.App. 1982). The party appealing from a summary judgment decision bears the burden of persuading the appellate court that the grant or denial of summary judgment was erroneous. *Simon Prop. Group, L.P. v. Acton Enters., Inc.,* 827 N.E.2d 1235, 1238 (Ind.Ct.App.2005), *trans. denied.* " 'If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper.' " *Starks v. Vill. Green Apartments,* 854 N.E.2d 411, 415 (Ind.Ct. App.2006) (quoting *Simon Prop.,* 827 N.E.2d at 1240).

## I. Breach of Contract

■ Towne contends that the trial court erred in granting summary judgment in favor of French–Tex on its breach of contract claim. The parties agree that under the terms of the Lease, Ohio law applies to the contract claim. *Appellees' App.* at 22. "Ohio courts have recognized the inherent contractual nature of lease agreements." *Timber Ridge Invs. Ltd. v. Marcus,* 107 Ohio App.3d 174, 178, 667 N.E.2d 1283, 1285 (Ohio Ct.App.1995). The construction of written contracts is a question of law. *Long Beach Ass'n, Inc. v. Jones,* 82 Ohio St.3d 574, 576, 697 N.E.2d 208, 209 (1998). In interpreting lease provisions, Ohio courts have applied traditional contract principles. *Marcus,* 667 N.E.2d at 1285.

■ Under a *de novo* review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. *Children's Med. Ctr. v. Ward,* 87 Ohio App.3d 504, 508, 622 N.E.2d 692, 695 (Ohio Ct.App.1993). "Common words in a written contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the face or overall content of the contract." *Kellie Auto Sales, Inc. v. Rahbars & Ritters Enters., L.L.C.,* 172 Ohio App.3d 675, 682, 876 N.E.2d 1014, 1019 (Ohio Ct.App. 2007) (citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 245–46, 374 N.E.2d 146, 150 (Ohio 1978)). Where terms of a contract are clear and unambiguous, then there is no question of fact to be determined. *Kellie Auto,* 172 Ohio App.3d at 682, 876 N.E.2d at 1019. However, if a term cannot be determined from the four corners of a contract, the meaning of the ambiguous language is a question of fact. *Id.* at 683, 876 N.E.2d at 1019.

■ "In general, parties of equal bargaining power are free to enter into any agreement the terms of which are enforceable by law." *In re Thompson,* 150 Ohio App.3d 98, 104, 779 N.E.2d 816, 821 (Ohio Ct.App.2002). Freedom to contract, however, may be limited for public policy reasons. *Lake Ridge Academy v. Carney,* 66 Ohio St.3d 376, 381, 613 N.E.2d 183, 187 (1993). "The Ohio Supreme Court has repeatedly admonished the courts against the loose application of 'public policy' to invalidate agreements, even in the context of ordinary contracts between private parties." *Stickovich v. Cleveland,* 143 Ohio App.3d 13, 25, 757 N.E.2d 50, 59–60 (2001).

Towne appeals the trial court's determination that it breached the contract by charging French–Tex a pro rata share of the property tax amount, which did not reflect a deduction for the PTRC. Both

Towne and French–Tex assert that the terms of the Lease are unambiguous, yet they disagree in all other respects regarding the interpretation of the relevant Lease provisions.

### A. Contract Terms

Specifically, the parties disagree as to the meaning of Clause 10 of the Lease, which provided in pertinent part as follows.

A. Commencing with the first day of the term of this Lease, Tenant shall pay Tenant's pro rata share of the Real Estate Tax Expense. Tenant hereby waives any right it may have, by statute or otherwise, to protest the real estate taxes and assessments. "Real Estate Tax Expense" means all real estate taxes and assessments, both general and special, *imposed* by federal, state or local government or any other taxing authority having jurisdiction over the Shopping Center against the land, buildings and all other improvements of the Shopping Center owned or leased by Landlord, and all expenses incurred by Landlord in negotiating, reviewing, administering, appealing or contesting such taxes and assessments. *Real Estate Tax Expense shall include the gross amount of real estate taxes, but such amount shall not* (i) be increased by any additional charges or penalties incurred by Landlord due to late payment of real estate taxes, or (ii) *be decreased by any reduction or abatement received by Landlord due to early payment of real estate taxes or otherwise....*

B. It is the intention of the parties hereto that the Landlord shall receive the rents and other charges required to be paid to Landlord by Tenant pursuant to this Lease *on an absolutely net basis* and that Tenant shall, except as specifically provided in this Lease to the contrary, pay all costs, expenses and obligations of every kind or nature whatsoever relating to the Demised Premises or any improvements thereon or to the tenancy therein created by this Lease, which costs, expenses and obligations may arise or become due during the term of this Lease....

*Appellant's App.* at 47–48, 104–05 (emphasis added).

### B. The Trial Court's Findings

In ruling on the parties' motions for summary judgment, the trial court found in favor of French–Tex on its breach of contract claim as follows:

The Plaintiff contends that the clear and unambiguous meaning of this lease term is that the Real Estate Tax Expense which is to be apportioned among tenants of the Northwest Plaza should be based on the tax **imposed** by the taxing authority after deducting the [PTRC].... [Towne] contends that the clear and unambiguous meaning of this lease term is that the Real Estate Tax Expense is to be computed based upon the **gross** amount of real estate taxes for the Northwest Plaza without consideration of the PTRC.

Indiana's PTRC which was in effect when the Leases which are the subject of this litigation were entered into, establishes a credit, or reduction, in the amount of real estate taxes payable by a landowner. Indiana Code 6–1.1–21–5 provides for an actual reduction in the tax billed by the county to the taxpayer. While the tax bill shows the amount of tax owed before the PTRC, the amount billed is the net amount after application of the PTRC. The law requires no action by a property owner in order to receive the PTRC.

Clause 10(A) of the Leases does provide that the Real Estate Tax Expense means all real estate taxes imposed by

the taxing authority and all expenses incurred by the Landlord in negotiating, reviewing, administering, appealing or contesting, such taxes. Clause 10(A) then goes on to provide that the Real Estate Tax Expense shall include the gross amount of real estate taxes which shall not be increased by any additional costs incurred by the Landlord for late payment of taxes or decreased by any reduction in cost due to early payment of real estate taxes or otherwise.... Specifically, Clause 10(A) does not allow any additional costs incurred by the Landlord due to the late payment of real estate taxes to be passed on to the Tenant and does not require that Landlord to pass onto the Tenant any reduction in cost received by the Landlord due to early payment of the real estate taxes or otherwise. The phrase "or otherwise" is not specifically defined. [Towne] argues that this phrase is intended to reference the reduction in property taxes due to the application of the PTRC and that [Towne] is, therefore, not bound to give the Plaintiff any credit for this reduction in the real estate taxes payable by [Towne]. The specifically listed circumstances in Clause 10(A) where the Landlord's Real Estate Tax Expense may or may not be increased or decreased all relate to actions solely within the control of the Landlord. Since the receipt of the PTRC is automatic and requires no action by the property owner, the Court does not accept [Towne's] interpretation of the phrase "or otherwise" in Clause 10(A).

The Court finds that the real estate taxes "imposed" by the taxing authority, as that term is used in Clause 10(A) of the Leases, refers to the real estate taxes for the property after deducting the PTRC....

....

The Court finds, as a matter of law, that under Clause 10(A) of the Leases, the Plaintiff's share of the Real Estate Tax Expense should be calculated using the real estate taxes due after deducting the PTRC.

*Id.* at 20–21, 22.

Pursuant to Clause 10(A), French–Tex had to pay Towne a pro rata share of the Real Estate Tax Expense, which was defined as all taxes *imposed* in connection with the Plaza. *Id.* at 47, 104. The trial court found that, for purposes of the Lease, tax "imposed" "refers to the real estate taxes for the property after deducting the PTRC," i.e., tax imposed essentially means tax paid. *Id.* at 21. The trial court concluded that "Real Estate Tax Expense" as used in Clause 10(A) is consistent with the common and ordinary understanding of the meaning of the word "expense," i.e. "the cost involved in some activity" or "something requiring the expenditure of money." [5] *Id.* Therefore, since the PTRC reduced Towne's expense, it should likewise have reduced French–Tex's expense.

### C. Ambiguous Language

■ The parties agree that the Lease should be interpreted to give effect, if possible, to every provision contained within the Lease. Where terms of a contract are clear and unambiguous, then there is no question of fact to be determined. *Alexander,* 53 Ohio St.2d at 246, 374 N.E.2d at 150. "However, if a term cannot be determined from the four corners of a contract, a factual determination of intent or reasonableness may be necessary to supply the

---

**5.** The trial court cited to the American Heritage Dictionary of the English Language for these definitions.

missing term." *Seneca Valley, Inc. v. Caldwell,* 156 Ohio App.3d 628, 633–34, 808 N.E.2d 422, 426 (2004); *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.,* 15 Ohio St.3d 321, 322, 474 N.E.2d 271, 273 (1984). The test for determining if a contract is ambiguous is whether reasonable persons would find the contract subject to more than one interpretation. *Covington v. Lucia,* 151 Ohio App.3d 409, 414, 784 N.E.2d 186, 190 (2003).

Clause 10(A) provided that French–Tex shall pay its pro rata share of Real Estate Tax Expense, which was defined in the Lease to mean, "all real estate taxes and assessments ... *imposed* by federal, state or local government. . . ." *Appellant's App.* at 47, 104. The trial court reasonably concluded that the use of the terms "imposed" and "expense," suggested that French–Tex was obligated to reimburse Towne for a pro rata share of the out-of-pocket taxes Towne was obligated to pay, nothing more. French–Tex asserts that the Lease, when read as a whole, is a triple net lease. *Appellant's Reply Br.* at 9–10. A triple net lease makes the lessee

> responsible for all of the costs relating to the asset being leased in addition to the rent fee applied under the lease. The structure of this type of lease requires the lessee to pay for net real estate taxes on the leased asset, net building insurance and net common area maintenance. The lessee has to pay the net amount of three types of costs. . . .

Investopedia, http://www.investopedia.com/terms/n/netnetnet.asp (last visited Aug. 28, 2008). "A 'triple-net-lease' is standard in leases of commercial property in shopping centers and malls." http://legal-dictionary.thefreedictionary.com/triple + net + lease (last visited Aug. 28, 2008)

▮ Ohio law, like Indiana law, seeks "a reasonable interpretation of each clause of a lease, one which is consonant with the plain language of the agreement." *Id.* at 9 (citing *Quill v. R.A. Inv. Corp.,* 124 Ohio App.3d 653, 661, 707 N.E.2d 35, 40 (1997)). Here, the Lease pertained to commercial space in a shopping center. Like a lessee under a triple net lease, here, French–Tex had to: (1) "pay for all charges for utility services," including a pro rata share of utilities used in common areas; (2) "keep and maintain, at its own cost and expense," the rented premises in good condition and repair; and (3) pay Tenant's pro rata share of the property tax. *Appellant's App.* at 47, 50, 104, 107.

Additionally, the Lease provided:

> the Landlord shall receive the rents and other charges required to be paid to Landlord by Tenant pursuant to this Lease *on an absolutely net basis* and that Tenant shall, except as specifically provided in this Lease to the contrary, *pay all costs, expenses and obligations of every kind or nature whatsoever* relating to the Demised Premises.

*Id.* at 48, 105 (emphasis added). The terms of the Lease suggest the parties' intent with regard to expenses like insurance, property tax, and maintenance should be "a pass through expense." *Appellant's Reply Br.* at 8. We find the trial court's interpretation particularly persuasive where, as here, the Lease contains language suggesting that the parties intended to enter into a triple net lease.

However, we also agree with Towne that the trial court's conclusion cannot be reconciled with the following language, which is also set forth in Clause 10(A):

> Real Estate Tax Expense shall include the *gross amount of real estate taxes,* but shall not (i) be increased by any additional charges, or penalties incurred by Landlord due to late payment of real estate taxes or (ii) be decreased by any

reduction or abatement received by Landlord due to early payment of real estate taxes or otherwise.

*Appellant's App.* at 47, 104 (emphasis added). Towne persuasively asserts that the use of the words "gross amount of real estate taxes" connotes the parties' intent that French–Tex be liable for the pre-credit tax bill—the amount imposed before subtracting the PTRC. *Appellees' Br.* at 13.

Towne further insists that the trial court ignored the fact that "Real Estate Tax Expense" is a single, unified term, which is defined by the Lease, and that to interpret Clause 10(A) as the trial court did is tantamount to rewriting the contract. *Id.* at 11. Towne offers, "[i]t is not the function of the courts to rewrite contracts to conform them to their notion of fairness, especially when the object is to benefit a sophisticated commercial entity, such as French–Tex...." *Id.* at 8.

To support its claim that French–Tex should not benefit from the PTRC, Towne highlights the following language from Clause 10(A): "Real Estate Tax Expense shall include the gross amount of real estate taxes, but such amount shall not ... be decreased by any reduction or abatement received by Landlord due to early payment of real estate taxes *or otherwise* ...." *Appellees' Br.* at 12 (emphasis added). The trial court found that "or otherwise" was restricted to reductions or abatements received as a result of actions within the landlord's control. *Appellant's App.* at 21. Noting that the PTRC requires no action on the part of the landlord, the trial court reasoned it was not the type of reduction contemplated by the phrase "or otherwise." *Id.* Towne argues that the phrase "or otherwise" is more than broad enough to include the PTRC and therefore prevent French–Tex from deducting the PTRC from its Real Estate

Tax Expense. *Appellees' Br.* at 12. Further, Towne offers that this interpretation allows the term "or otherwise" to be reconciled with the language that precedes it— "Real Estate Tax Expense shall include the *gross amount* of real estate taxes...." *Id.* at 13.

Next, Towne argues that its interpretation of Clause 10(A) is consistent with the nature of the PTRC and tax credits generally. *Id.* at 14. The Indiana Tax Court has stated that a tax credit is "an allowance against the tax itself." *Graybar Elec. Co. v. State Bd. of Tax Comm'rs,* 723 N.E.2d 491, 495 (Ind. Tax Ct.2000). "There can be no credit against that which does not exist; by definition a credit offsets a tax that has been imposed." *Appellees' Br.* at 14. Towne suggests, "while the trial court may have been correct insofar as it concluded that the property taxes owed after application of the PTRC are 'imposed,' in the sense of being levied or exacted, ... it was wrong to suggest that the property taxes owed *before* applying the PTRC are not also 'imposed.'" *Id.* at 14–15 (emphasis in original). "Indeed, if the pre-credit amount is not imposed by the taxing authority, what then is it?" *Id.* at 15. Towne concludes that it is only the pre-credit amount that could have been "imposed."

Finally, Towne argues that the language in Clause 10(B) reinforces its interpretation of Clause 10(A). *Id.* at 15–16. While French–Tex argues that the receipt of rents "on an absolutely net basis" supports an inference that this is a triple net lease, Towne contends that "[b]eing paid 'absolute net' means the landlord expects to receive its rental share without any deductions or set offs." *Id.* at 16. The PTRC, Towne argues, would be just such a set off. Towne argues that, since commercial landlords are in the business of making money, there is nothing improper or illegal about

Towne charging French–Tex more than Towne's actual expenses. *Id.* Where the language of the Lease provides for such an arrangement, it is not the court's job to save French–Tex from a bad deal. *Id.; Walther v. Walther*, 102 Ohio App.3d 378, 383, 657 N.E.2d 332, 335 (Ohio Ct.App. 1995) (contract does not have to be fair or equitable to be enforceable); *accord Gunsorek v. Pingue*, 135 Ohio App.3d 695, 701, 735 N.E.2d 487, 491–92 (1999). Towne maintains that French–Tex's current displeasure with the Lease "is no reason to rewrite the language today." *Appellees' Br.* at 18.

The parties have presented contradictory, albeit equally reasonable, interpretations of the language in Clause 10(A). There is a genuine issue of material fact as to what the parties intended by this language. Therefore, summary judgment was inappropriate on this issue. We remand for the parties to introduce evidence outside the four corners of the Lease to allow a finder of fact to determine what the parties intended by this language.

## II. Conversion

French–Tex next contends that it was improper for the trial court to grant summary judgment in favor of Towne on French–Tex's criminal conversion claim. French–Tex argues that Towne knowingly or intentionally overcharged French–Tex for its pro rata share of the Plaza's real estate taxes, and that Towne's control of this overcharged amount constituted criminal conversion.

In its complaint, French–Tex requested treble damages pursuant to IC 34–24–3.[6] *Appellant's App.* at 33. Under IC 34–24–3–1, a person who proves the elements of criminal conversion by a pre-

ponderance of the evidence can recover the costs of the action, reasonable attorney's fees, and up to three times the actual damages. *Jamrosz v. Res. Benefits, Inc.*, 839 N.E.2d 746, 758 (Ind.Ct.App.2005), *trans. denied* (2006) (citing *Whitaker v. Brunner*, 814 N.E.2d 288, 297 (Ind.Ct.App. 2004), *trans. denied* (2005)). A person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss. *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind.Ct.App.2008), *trans. denied* (citing *Sam & Mac, Inc. v. Treat*, 783 N.E.2d 760, 766 (Ind.Ct.App.2003)).

Criminal conversion requires proof that a person knowingly or intentionally exerted unauthorized control over property of another person. IC 35–43–4–3. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." IC 35–41–2–2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." IC 35–41–2–2(b). A person's control over property of another person is "unauthorized" if it is exerted in a manner or to an extent other than that to which the other person has consented. IC 35–43–4–1(b)(2).

Unlike in a criminal trial, a claimant in a civil action need only prove by a preponderance of the evidence that the defendant committed the criminal act; a criminal conviction of conversion is not a condition precedent to recovery in the civil action. *Jamrosz*, 839 N.E.2d at 759. Nevertheless, the claimant must prove all the elements of the alleged criminal act. *Loudermilk*, 879 N.E.2d at 597. In any criminal conversion action, criminal intent

---

**6.** In its brief, French–Tex cites to IC 34–4–30–1 to support its claim for treble damages. *Appellant's Br.* at 3. However, IC 34–4–30 was repealed in 1998 and reenacted that same year in IC 34–24–3.

is an essential element that must be proven. *Id.* It is this *mens rea* requirement that differentiates criminal conversion from a more innocent breach of contract or failure to pay a debt, which situations the criminal conversion statute was not intended to cover. *Id.*

Here, to establish *mens rea*, French–Tex must show that Towne was aware of a high probability its control over the PTRC was unauthorized. *Id.* French–Tex suggests that Towne issued its bill "in a manner in which [French–Tex] could not tell that the landlord had billed them based upon an amount higher than the landlord had actually paid to the County Treasurer." *Appellant's Br.* at 2. French–Tex further offers that this billing process was repeated over a course of more than a decade, and, while the trial court denied French–Tex's request to certify this as a class action, French–Tex suggested that Towne's other Indiana tenants were billed in the same manner. *Id.*

Towne asserts that French–Tex's claim for conversion is nothing more than a repackaged version of its breach of contract claim brought for no other purpose than to up the ante in this case. *Appellees' Br.* at 24 (citing *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind.2003) (recognizing the obvious incentive to frame an alleged breach of contract as a tort so as to garner more generous damages)). Further, Towne contends that absent a claim for breach of contract, French–Tex's conversion claim would be an empty vessel; the two claims are inextricably intertwined. *Id.* at 24–25. Noting that French–Tex describes its claim as one of a landlord over-billing a tenant, Towne contends that whether an overcharge occurred "turns in the first instance on a question of contract interpretation—what exactly does the 'gross amount' of real estate taxes 'imposed' mean." *Id.* at 25. As such,

French–Tex's claim constitutes a bona fide contract dispute and not a claim for conversion.

In granting summary judgment in favor of French–Tex, the trial court noted:

The alleged overcharging by [Towne] is based solely upon additional charges imposed upon [French–Tex] by virtue of the fact that [Towne], pursuant to its interpretation of Clause 10(A) of the Leases, used the total real estate taxes rather than the taxes "imposed" by the taxing authorities which included the PTRC....

[T]o sustain its burden of proof on the criminal conversion claim ... [French–Tex] must present evidence of "criminal intent" on the part of [Towne].... It is the *mens rea* requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal conversion statute was not intended to reach. The Indiana legislature did not intend to criminalize bona fide contract disputes. *Where a defendant believes it has a contractual right to the property at issue, the mens rea requirement is defeated and plaintiff cannot state a claim for relief....* [T]here is not a material issue of fact that [Towne] or its agents had the requisite *mens rea* to support a claim for criminal conversion....

*Appellant's App.* at 21–22 (emphasis added) (citations omitted).

 Finding that the gravamen of the present action is one of contract construction, we agree with the trial court's reasoning. *See Jamrosz*, 839 N.E.2d at 759. Where, as here, the source of Towne's duty toward French–Tex arises from a contract, "then 'tort law should not interfere.'" *Paniaguas v. Endor, Inc.*, 847 N.E.2d 967, 970 (Ind.Ct.App.2006), *trans. denied* (quoting Estelle, 798 N.E.2d

at 175). As we have previously noted, the Indiana legislature did not intend to criminalize bona fide contract disputes. *Jamrosz*, 839 N.E.2d at 759. While Towne intentionally calculated French–Tex's pro rata share of the Real Estate Tax Expense using the gross tax owed before the application of the PTRC, Towne acted in accordance with a reasonable interpretation of the ambiguous contract. *See Greco v. KMA Auto Exch., Inc.*, 765 N.E.2d 140, 148 (Ind.Ct.App.2002). Therefore, it cannot be said that Towne's knowing control over the PTRC was unauthorized. The *trial court did not err in granting summary judgment in favor of Towne on French–Tex's conversion claim.*

### III. Cafaro's Dismissal as a Party

■ Finally, French–Tex asserts that the trial court erred in granting summary judgment in favor of Cafaro on French–Tex's breach of contract and conversion claims because there is a genuine issue of material fact whether Cafaro was sufficiently involved in the management of the Plaza and in the overbilling of French–Tex to constitute a proper party in this suit. *Appellant's Br.* at 8.

The trial court entered summary judgment in favor of Cafaro with the following comments:

> The Leases at issue in these proceedings were entered into by [Towne] and [French–Tex]. The Secretary and Statutory Agent, Timothy Matune, for [Towne] averred in his Affidavit that [Cafaro] did not own or lease the units in [the Plaza] . . ., and did not enter into any lease with the Plaintiff. [French–Tex], in its memorandum in Opposition to Defendants' Motion for Summary Judgment, has referenced the Court to letters written on [Cafaro] stationary . . . relating to the units in the [Plaza]. [French–Tex] also presented other docu-

> mentation that [Cafaro] participated in the payment of the real estate taxes for the [Plaza]. While this documentation creates a material issue of fact regarding whether [Cafaro] had employees and participated in the payment of the property taxes for the [Plaza] . . ., this documentation does not, standing alone, create a material issue of fact regarding whether [Cafaro] was a party to the Leases which are the bases of the Plaintiff's claim for relief or that [Cafaro] otherwise has any direct liability to the Plaintiff arising from the Leases. As a consequence, the Court finds that the Defendants' Motion for Summary Judgment as it relates to Plaintiff's claims against [Cafaro] should be granted.

*Appellant's App.* at 19.

■ It is undisputed that the Lease between French–Tex and Towne did not name or directly involve Cafaro. However, liability could be imputed to Cafaro through the Lease if Cafaro was acting as Towne's alter ego. *See Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1191 (Ind. Ct.App.2002), *trans. denied.* As a general rule, Indiana courts are reluctant to disregard corporate identity and do so only to protect third parties from fraud or injustice when transacting business with a corporate entity. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 504 (Ind.Ct.App.2007) (citing *Cmty. Care Ctrs., Inc. v. Hamilton*, 774 N.E.2d 559, 564–65 (Ind.Ct.App.2002)); *Oliver*, 769 N.E.2d at 1191.

■ While French–Tex suggests that Towne's relationship with Cafaro gives rise to the latter entity being liable for the breach of contract claim, it is French–Tex's burden to establish that Towne was so ignored, controlled, or manipulated that it was merely the instrumentality of Cafaro and that the misuse of the corporate form would constitute a

fraud or promote injustice. *Four Seasons,* 870 N.E.2d at 504. Here, such proof would require evidence of: (1) Towne's undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Oliver,* 769 N.E.2d at 1192 (citing *Aronson v. Price,* 644 N.E.2d 864, 867 (Ind.1994)). French–Tex made no such showing.

To overcome this hurdle, French–Tex labels Cafaro as a landlord, and characterizes the issue as, "a landlord over-billing its tenant for real estate property taxes." *Appellant's Br.* at 8. French–Tex supports its claim of Cafaro's involvement by focusing on Cafaro's management of the Plaza (including paying Plaza taxes and corresponding with tenants about Plaza maintenance issues). This emphasis on management allows French–Tex to conclude that Cafaro falls within the definition of landlord found in the IC 32–31–3–3, and therefore is French–Tex's landlord, and a liable party, under the Lease.

Cafaro counters that the nature of French–Tex's complaint is one for breach of contract. As such, since Towne and French–Tex were the only parties to the Lease, Cafaro cannot be a party to either the conversion or breach of contract claim.

Cafaro is not a landlord under the definition set forth in the Lease, nor is Cafaro a landlord as that term is defined in IC 32–31–3–3.[7]

Cafaro admits that Towne's property taxes may have been paid on Cafaro checks, and Cafaro stationary may have been used occasionally to communicate with French–Tex and other tenants of the Plaza. However, Cafaro contends that it: (1) did not own the Plaza; (2) was not on the tax statements; (3) was not on the Lease; and (4) is an entirely separate company from Towne. *Appellees' Br.* at 35–36. Additionally, it points to the fact that French–Tex made no attempt to pierce the corporate veil. *Id.* at 36. Like the trial court, we find no genuine issue of material fact regarding Cafaro's liability for breach of contract under the Lease.

 For conversion, Cafaro's liability, if any, could arise only through its relationship with Towne. Finding, as we do, that Towne did not have the necessary *mens rea* to support French–Tex's claim for conversion, we affirm the trial court's grant of summary judgment in favor of Cafaro on French–Tex's conversion claim.

We affirm the trial court's grant of summary judgment in favor of Cafaro on the breach of contract and conversion claims, affirm the trial court's grant of summary judgment in favor of Towne on the conversion claim, and reverse the trial court's grant of summary judgment in favor of French–Tex on the breach of contract

7. French–Tex cites the following definition from IC 32–31–3–3:

> As used in this chapter, "landlord" means: (1) the owner, lessor, or sublessor of a rental unit or the property of which the unit is a part; or (2) a person authorized to exercise any aspect of the management of the premises, including a person who directly or indirectly: (A) acts as a rental

agent; or (B) receives rent or any part of the rent other than as a bona fide purchaser.

As French–Tex notes, this definition is restricted to residential dwellings. *Appellant's Br.* at 9. Additionally, this definition is not intended for use in all of Title 32 (Property); instead, it applies only to a chapter entitled, "Security Deposits."

claim. We remand for further actions consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and BROWN, J., concur.