


FILED
Jun 03 2024, 8:43 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

Mahvash K, LLC,

*Appellant-Plaintiff and Counterclaim Defendant*

v.

Hardwood Timber & Veneer, Inc.,

*Appellee-Defendant and Counterclaim Plaintiff*

Hardwood Timber & Veneer, Inc.,

*Appellee and Third-Party Plaintiff*

v.

Mahvash Khosrowyar, Mahvash Kariminoghaddam, Mahvash N/A Karimi Moghaddam, and Mahvash Khosrowyar Revocable Trust,

*Appellants and Third-Party Defendants*

Appeal from the Hamilton Superior Court

The Honorable Jonathan M. Brown

Trial Court Cause No.
29D02-2005-CT-3368

**Opinion by Judge Brown**
Judges Riley and Foley concur.

**Brown, Judge.**

[1]     Mahvash K, LLC, ("Karimi")[1] appeals the trial court's judgment and award of damages in favor of Hardwood Timber & Veneer, Inc., ("Hardwood Timber"). Karimi contends that the court erred in finding her liable for criminal conversion pursuant to Ind. Code § 34-24-3-1, and that the damages award is excessive.  We reverse and remand.

---

[1] Mahvash K, LLC, is a limited liability company owned by Mahvash Karimi. She has gone by several different individual and entity names which are all listed in the case caption.  For ease of reference, both parties and the trial court refer to the appellant/defendant/third-party defendants as "Karimi," and we do as well.

## Facts and Procedural History

The current case comes to us following a bench trial, appeal, remand to the trial court, and a second bench trial. The underlying facts as recited by another panel of this Court in the prior appeal follow:

> Mahvash Karimi lives on Spring Mill Road in Carmel. Her house sits on 4.3 acres, and she owns several adjoining parcels totaling around thirty acres. The acreage, which is wooded, is just north of I-465.
>
> In the summer or fall of 2017, Karimi contacted John Collier, who owns John Collier Logging Company LLC, about buying some of her timber. John went to Karimi's house and marked the trees he wanted to purchase with bright orange or pink paint, including some walnut trees on a 3.7-acre parcel.
>
> On January 26, 2018, Karimi and John Collier Logging executed a "Contract for Purchase and Cutting of Timber." (referred to as "Contract 1"). Contract 1 described the timber to be cut as "All marked trees" and provided there "could be more trees if so that's more money." Contract 1 also said John Collier Logging would "take care of the yard and do a good job not disturbing the ground." Contract 1 did not list a total price (the spot for the total price was left blank) but stated Karimi had been given a $7,500 down payment. Contract 1 gave John Collier Logging eighteen months to remove the timber.
>
> After Contract 1 was executed, Karimi told John she needed more money and asked him if he could "mark more trees." John returned to Karimi's property and marked more trees, which were mainly "dead ash" and less desirable than the first trees he marked. Thereafter, John had some health issues and determined he couldn't complete the job within the required time frame. John asked his brother Ray Collier—owner of Hardwood Timber & Veneer, Inc.—if he wanted the job. In early March

2019, John and Ray went to Karimi's house, and John showed Ray the trees he had marked.

On March 22, Karimi and Hardwood Timber executed a "Timber Contract." (referred to as "Contract 2"). Contract 2, which did not reference Contract 1, was for "ALL marked trees on all parcels" for $28,500. Contract 2 also provided Hardwood Timber would trim the trees around the pool, house, and gate and "make sure the yard is back to as good or better than when we started." In addition, Contract 2 contained the following provision about change in ownership:

> Seller [Karimi] agrees to notify Purchaser [Hardwood Timber] a minimum of thirty (30) days prior to any change in ownership of the property on which the standing timber is located. Prior to any change of ownership of such property, Seller agrees to notify any and all buyers of such property of Purchaser[']s ownership of standing timber and of the rights and obligations of this timber contract.

That same day, Hardwood Timber paid Karimi $21,000—the $28,500 contract price minus the $7,500 Karimi had received from John Collier Logging.

On April 11, Hardwood Timber asked Karimi to sign another document. Hardwood Timber told Karimi it tried to record Contract 2 with the Hamilton County Recorder, but the Recorder said the contract needed to contain legal descriptions of the parcels and be notarized. Karimi signed the new document. (referred to as "Contract 3"). Contract 3 did not reference Contract 1 or Contract 2. Although Contract 3 was largely the same as Contract 2, it did not list a price. Hardwood Timber had Contract 3 notarized after Karimi signed it (meaning Karimi didn't sign Contract 3 in the notary's presence) and then filed it with the Recorder on April 15.

On April 27, after Hardwood Timber had started work, Karimi sent it a letter stating she had "recently signed a purchase agreement to sell" the 3.7-acre parcel, which had the marked walnut trees on it, to her neighbor. In the letter, Karimi acknowledged there were marked trees on that parcel but instructed Hardwood Timber to "not remove any trees within this area" until they could determine the exact number of trees. After discussions between the parties, on May 3 Karimi told Hardwood Timber to "[s]top cutting" on the 3.7-acre parcel. Shortly thereafter, she ordered Hardwood Timber to "[s]top coming" to her property altogether. Hardwood Timber left before it could remove the trees it had marked on the 3.7-acre and other parcels or provide any restoration work.

In May 2020, Karimi filed a complaint against John Collier Logging and Hardwood Timber alleging (1) breach of contract for removing more trees than it agreed to remove; (2) negligence for creating and not repairing damage caused by rutting; and (3) slander of title for putting a lien on her property. Hardwood Timber filed a counterclaim against Karimi alleging (1) breach of contract for "bar[ring] [it] access [to her property] to complete the harvest of the identified trees" it had purchased; (2) unjust enrichment for Karimi retaining the benefit of the trees it had purchased; and (3) conversion for "exert[ing] unauthorized control over the property sold to" Hardwood Timber.

A bench trial was held in March 2021. Karimi presented evidence that Hardwood Timber's equipment had created ruts on her property, including some that were twenty-four inches deep. Ray acknowledged Karimi's property needed restoration work; however, he said he does this work "at the end of the job" and because Karimi barred him from her property he couldn't do it even though he was "ready, willing, and able."

The court issued findings and conclusions. Specifically, the court (1) entered judgment against Karimi on her breach-of-contract

claim because it found there was no valid contract since there was "no agreement as to price and tree count"; (2) entered judgment against John Collier Logging and Hardwood Timber on Karimi's negligence claim based on damage caused by rutting and awarded Karimi $33,967.27; (3) entered judgment against John Collier Logging and Hardwood Timber on Karimi's slander-of-title claim for filing the "defective" contract (which wasn't signed in the notary's presence) with the Recorder and awarded Karimi $2,500 in attorney's fees for "litigating the removal of the recorded contract[ ] encumbering the title"; and (4) entered judgment against Hardwood Timber on its counterclaims.

*John Collier Logging, Inc. v. Mahvash-K. LLC*, No. 21A-CT-954, 2021 WL 5707458, at *1-3 (Ind. Ct. App. Dec. 2, 2021) (footnotes and record citations omitted).

[3]     John Collier Logging and Hardwood Timber appealed and this Court affirmed in part and reversed and remanded in part. Specifically, we determined that due to the failure to include a total price or a method for determining price, Contracts 1 and 3 were invalid and unenforceable. *Id*. at *4-5.[2] However, we concluded Contract 2 which failed to specify the number of trees but did include a price, was valid and enforceable. *Id*. at 5. In light of our conclusion that Contract 2 was valid and enforceable, we remanded to the trial court to consider Harwood Timber's breach of contract claim against Karimi and

---

[2] Because we deemed Contract 1 unenforceable and this was the only alleged agreement between Karimi and John Collier Logging, we instructed the trial court upon remand to dismiss John Collier Logging from the case.

determine "if Karimi breached [Contract 2]" and if so, to "determine damages" for that breach. *Id.* We further ordered the court on remand to reconsider its entry of judgment in favor of Karimi on her negligence claim because, if the court determined that she breached the contract first by banning Hardwood Timber from her property, then she "may be out of luck" regarding her negligence claim based on Hardwood Timber's failure to restore the property. *Id.* at \*6 (citing *Hussain v. Salin Bank & Tr. Co.*, 143 N.E.3d 322, 331 (Ind. Ct. App. 2020) (noting that if one party to contract commits the first material breach, it cannot seek to enforce contract against the other party if that party breaches contract later), *trans. denied*). Finally, we ordered the court to reconsider its denial of Hardwood Timber's counterclaim for conversion as that denial was based on its erroneous conclusion that Contract 2 was invalid and unenforceable. *Id.*

[4] On August 30, 2022, the trial court began the second bench trial. Hardwood Timber requested findings of fact and conclusions thereon, which the trial court issued on July 10, 2023. The trial court found and concluded in relevant part as follows:

> 26. [Contract 2] between Karimi and Hardwood was for "ALL marked trees on all parcels" and . . . it set forth a price in the amount of $28,500;
>
> 27. While [Contract 2] did not specify the specific number and types of trees to be harvested, the agreement was for "all marked trees on all parcels". . . and the trees were clearly identified and marked with bright paint;

\* \* \* \* \*

32. Pursuant to [Contract 2], . . . Karimi, as Seller:

- Warranted her title to the standing timber conveyed by her;
- Agreed to notify Hardwood, a minimum of thirty (30) days prior to any change in ownership of the land on which the standing timber was located, and to notify all buyers of the property rights of Hardwood, in the timber purchased by Hardwood;
- Agreed to grant Hardwood, full and free rights of ingress and egress to the Property, on which the purchased timber was located, . . . for the purpose of harvesting, cutting, felling, and removing the trees;
- Hardwood agreed to remove the standing timber within a period of 1½ years from the date of signing [Contract 2] (March 22, 2019);
- Hardwood agreed to trim trees around the pool, house, and gate on the Property, and take down a tree by the house;
- Hardwood agreed, after its work was finished, to make sure the yard was returned to "as good or better than we started";

\* \* \* \* \*

38. From 2017 through 2019, Karimi resided on the Property, and had ample opportunity to ascertain which trees had been marked for harvest . . . ;

\* \* \* \* \*

44. On April 27, 2019, Karimi, in an email to Hardwood (Exhibit F) informed Ray Collier she had signed a purchase agreement to sell approximately 3.7 acres of the Property . . . and further stated "[a]t this point, please do not remove any trees within this area.";

\* \* \* \* \*

46. . . ., on May 3, 2019, Karimi communicated to Hardwood [] via text message to "stop cutting.";

47. Hardwood protested Karimi's breach of her obligation;

48. Hardwood was then barred by Karimi and her realtor from thereafter accessing the Property to remove its purchased timber;

* * * * *

57. The value of the standing timber purchased by Hardwood, which it was unable to harvest as a result of being barred from the Property, amounted to . . . $108,630.00;

* * * * *

71. Karimi has already received $28,500.00 for all the marked trees, which were sold to Harwood, pursuant to Exhibit 2;

72. The terms of [Contract 2] are clear, and the subject matter of the contract, "all marked trees on all parcels" is readily identifiable . . . ;

* * * * *

74. Once Karimi signed [Contract 2] and received the funds from Hardwood, the title to all marked trees on all parcels on the Property became the property of Hardwood, or to put it more bluntly, were no longer the property of Karimi;

* * * * *

76. Karimi was the first party to breach [Contract 2];

77. Karimi breached [Contract 2] by barring Hardwood from the Property, preventing it from removing its purchased timber;

78. As Karimi barred Hardwood from the Property, she prevented Hardwood from completing any of the restorative work set forth in [Contract 2], and it is unjust for her to now claim damages for the condition of the Property;

* * * * *

81. . . . as Karimi breached the contract first, Hardwood Timber should not be punished for not restoring the property as promised because Karimi ordered them off the Property;

* * * * *

83. By her conduct . . . Karimi exercised unauthorized control over the property of Hardwood, namely the trees which Hardwood obtained a legal interest in with the execution of [Contract 2], in violation of Ind. Code § 35-43-4-1;

84. Hardwood suffered actual damages;

85. Karimi's conduct was knowing, intentional, willful, and malicious; and

86. Hardwood is entitled, pursuant to Ind. Code § 35-43-4-1, to recover judgment from Karimi . . . in an amount equal to <u>up to</u> three (3) times its proven damages of $108,630.00,[3] together with its reasonable attorney fees.

Appellants' Appendix Volume II at 18-27.

Based upon the foregoing, the trial court entered judgment in favor of Hardwood Timber and against Karimi on her complaint for breach of contract and negligence, "with the exception" that the judgment previously rendered to Karmi for attorney fees on her slander of title claim in the sum of $2,500 "as

---

[3] Although the trial court stated that Hardwood Timber had proven damages of $108,630, later in its findings of fact and conclusions thereon it appears that it increased this number by $27,000 based upon Ralph Knauss's testimony that he would have paid Hardwood Timber $27,000 for unharvested "butt logs." Appellants' Appendix Volume II at 33.

affirmed by the Indiana Court of Appeals, together with an additional [$2,500] is assessed as an offset" against Hardwood Timber's judgment. *Id.* at 30. The court entered judgment in favor of Hardwood Timber on its breach of contract and conversion counterclaims, and awarded total damages of $178,390.[4] Karimi filed a motion to correct error which was denied by the trial court.

## Discussion

[6] The issue is whether the trial court's judgment and damages award is clearly erroneous. Karimi does not challenge the trial court's judgment in favor of Hardwood Timber on her negligence claim or on Hardwood Timber's breach of contract counterclaim. Rather she challenges the court's judgment in favor of Hardwood Timber on its counterclaim for conversion and its total award of damages. Our standard of review is well settled. "When a trial court enters findings of fact and conclusions thereon, the findings control as to the issues they cover and a general judgment will control as to the issues upon which there are no findings." *Thalls , Tr. of M. Todd Thalls Revocable Tr. v. Draving*, 182 N.E.3d 260, 265 (Ind. Ct. App. 2022) (citing *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)). When a trial court has made findings of fact, the appellate

---

[4] The trial court stated that this sum included $149,390 in actual damages plus $33,000 in attorney fees, less the offset of $5,000. As noted by Karimi, it is evident that the trial court committed an arithmetic error as such a calculation should have resulted in a net judgment of $177,390. Moreover, it is unclear how the trial court came up with $149,390 in actual damages as the only amounts accounted for in the court's findings of fact and conclusions thereon totaled $135,630, resulting in a $13,760 discrepancy in Hardwood Timber's favor. In its order denying Karimi's motion to correct error in which she alerted the court to this discrepancy, the trial court simply stated it had decided to award Hardwood Timber a "slight increase" in damages by awarding it $149,390. Appellant's Appendix Volume II at 34.

court first determines whether the evidence supports the findings of fact and then whether those findings support the trial court's conclusions. *Id*. Findings will be set aside only if they are clearly erroneous. *Id*. Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. *Id*. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id*. In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id*.

A. *Evidence of Conversion*

[7] With respect to the trial court's finding that she committed conversion, Karimi argues the "evidence provided at trial does not support the conclusion that [her] conduct had the necessary criminal intent to support a finding of criminal conversion." Appellants' Brief at 31. Hardwood Timber responds that Karimi's actions in "barring" it "from harvesting its purchase" constituted not only a breach of contract but also conversion. Appellee's Brief at 9.

[8] A person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action pursuant to Ind. Code § 34-24-3-1 to recover the loss. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 814 (Ind. 2009). A claimant who proves the elements of criminal conversion by a preponderance of the evidence can recover the costs of the action, reasonable attorney fees, and up to three times the actual damages. *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1166-1167 (Ind. Ct. App. 2008). Criminal conversion requires

proof that a person knowingly or intentionally exerted unauthorized control over property of another person. Ind. Code § 35-43-4-3. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). A person's control over property of another person is "unauthorized" if it is exerted in a manner or to an extent other than that to which the other person has consented. Ind. Code § 35-43-4-1(b)(2).

[9] Unlike in a criminal trial, a claimant in a civil action need only prove by a preponderance of the evidence that the defendant committed the criminal act; a criminal conviction of conversion is not a condition precedent to recovery in the civil action. *French-Tex*, 893 N.E.2d at 1166. Still, a civil claimant must prove all the elements of the alleged criminal act, and criminal intent is an essential element that must be proven. *Id.* "It is this mens rea requirement that differentiates criminal conversion from a more innocent breach of contract or failure to pay a debt, which situations the criminal conversion statute was not intended to cover." *Id.*

[10] Our review of the record reveals that this contract dispute revolved around the number of trees and the exact trees that were the subject of the parties' timber agreement. Both trial judges in the proceedings below and the parties were obviously confused due to the lack of specificity in Contract 2 on this matter. Although in the prior appeal we determined Contract 2 was valid and

enforceable despite its broad reference that the sale to Hardwood Timber included "ALL marked trees on all parcels," that does not equate to Karimi knowingly or intentionally exerting unauthorized control over Hardwood Timber's property when she barred them from continuing cutting initially on the 3.7 acre tract and eventually on the property altogether.[5] Rather, in doing so, Karimi simply breached the contract. Her trial testimony made abundantly clear that the contract dispute between the parties began due to Karimi's belief that she had sold 87 trees as opposed to 300 that Hardwood Timber later indicated may have been marked. In fact, tree count was the center of this bona fide contract dispute as Karimi's testimony was unequivocal that she was not aware of which trees were marked, the total number of marked trees, how many, if not all, had already been harvested, or their location.

[11] While we agree with the trial court that Karimi's failure to personally inspect the Property for all the marked trees, either prior to or after she sold those trees to Hardwood Timber, "[did] not alter Hardwood [Timber's] right to harvest all the trees they purchased," this is simply the crux of the breach of contract claim. Appellants' Appendix Volume II at 26. There is no evidence to support the trial court's conclusion that Karimi's conduct "was knowing, intentional, willful, and malicious." *Id.* at 27. Rather, evidence of Karimi's communications with Hardwood Timber throughout the period of their dispute

---

[5] We noted that "Contract 2 would have been clearer if it specified the number of marked trees" but "[r]easonable certainty" and not "absolute certainty" is required to establish contract validity. *John Collier Logging*, 2021 WL 5707458, at *5 (citing *Conwell*, 906 N.E.2d at 813).

demonstrated her confusion, and further demonstrated her continued attempts to rectify the dispute as to tree count and location, and to make sure Hardwood Timber obtained its benefit of the bargain. *See* Exhibits Volume IV at 86, 93-94. In other words, there is no evidence that it was Karimi's conscious objective to exercise unauthorized control over the property of another or that she was aware of a high probability that she was doing so. Our review of the evidence has left us with a firm conviction that a mistake has been made. The trial court's findings and judgment to the contrary are clearly erroneous.

[12] Case law cited by Karimi supports our conclusion. In cases in which this Court has found criminal conversion within the backdrop of a contract dispute, the evidence of criminal intent supporting a finding of criminal conversion, as opposed to a more innocent breach of contract, has been clear and undisputable. *See Whitaker v. Brunner*, 814 N.E.2d 288, 296 (Ind. Ct. App. 2004) (sufficient evidence to support conversion finding when tortfeasors knowingly purchased items using someone else's business accounts without authorization, sold the items, and kept the proceeds), *trans. denied*; *Greco v. KMA Auto Exch., Inc.*, 765 N.E.2d 140, 145 (Ind. Ct. App. 2002) (sufficient evidence to support conversion finding when car dealer, that knowingly had no security interest in or right to possession of vehicle, refused to return vehicle to owner unless owner paid down payment for service work that owner never intended to allow dealer to perform); *see also Stephens v. Tabscott*, 159 N.E.3d 634, 641 (Ind. Ct. App. 2020) (sufficient evidence to support conversion finding when tortfeasor accepted and encouraged deed transfer while promising to pay

$16,000 but with no intention to do so; emphasizing that tortfeasor "did not simply breach the agreement; he entered into it fraudulently"). We reverse the trial court's judgment in favor of Hardwood Timber on its conversion claim.

B. *Excessive Damages*

[13] Having determined that this case involves only a breach of contract and not conversion, we turn to address Karimi's assertion that the trial court's damages award is excessive. A trial court's award of damages is subject to review for an abuse of discretion. *CT102 LLC v. Auto. Fin. Corp.*, 175 N.E.3d 869, 872-873 (Ind. Ct. App. 2021). This Court will not reverse a damage award upon appeal unless it is based on insufficient evidence or is contrary to law. *Id*. The appropriate measure of damages in a breach of contract case is the loss actually suffered as a result of the breach. *Id*. The non-breaching party is not entitled to be placed in a better position than it would have been if the contract had not been broken. *Id*.

[14] A factfinder may not award damages on the mere basis of conjecture and speculation. *Maples Health Care, Inc. v. Firestone Bldg. Prod.*, 162 N.E.3d 518, 528 (Ind. Ct. App. 2020). Instead, the award must be supported by probative evidence. *Id*. "Accordingly, a damage award must reference some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances." *Id*. (citations omitted). When the specific issue on review relates to a question of inadequate or excessive damages, we will not reverse a

damage award if it is within the scope of the evidence before the trial court, and we neither reweigh the evidence nor judge the credibility of the witnesses. *Ponziano Const. Servs. Inc. v. Quadri Enterprises*, LLC, 980 N.E.2d 867, 873 (Ind. Ct. App. 2012).

[15]   The trial court here entered judgment damages in favor of Hardwood Timber in the amount of $178,390.[6]  This amount is both unsupported by the evidence and contrary to law.  First, as we have found the trial court's judgment regarding conversion to be clearly erroneous, Hardwood Timber is not entitled to attorney fees or treble damages pursuant to Ind. Code § 34-24-3-1.  Second, the trial court found that Hardwood Timber had presented sufficient evidence to support "actual damages" in the amount of $135,630.  Appellants' Appendix Volume II at 33.  However, Karimi points out that in arriving at this number, the trial court assigned specific values to a specific number and species of unharvested (standing) trees to arrive at a total value for the unharvested trees of $108,630, plus another $27,000 for the "butt logs."  *Id.*  Karmi argues "there is no basis for the trial court's award other than conjecture and speculation" because the court "made calculations based on values and numbers that do not exist in the record."  Appellants' Brief at 27; Reply Brief at 9.  Hardwood Timber points generally to the testimony of Ralph Knauss and Jud Scott as supportive of the trial court's calculations.  However, our careful review of their testimony reveals support for only a small fraction of the fair market value

---

[6] As noted earlier, this figure contains an arithmetic error.

numbers assigned by the trial court. In other words, the values ascertained by the trial court are nowhere within the scope of the evidence presented at trial.

[16] More significantly, the value of the unharvested timber would not be the proper measure of the actual loss suffered by Hardwood Timber as a result of Karimi's breach of contract.[7] The best, and only, evidence of the loss actually suffered by Hardwood Timber came from owner Ray Collier, testifying on behalf of his company. Ray testified that Hardwood Timber's net loss caused by Karimi's breach of contract was $16,000.[8]

[17] In sum, Hardwood Timber is entitled to damages for the loss it actually suffered as a result of Karimi's breach of contract, and not for conversion damages and not for damages unsupported by the evidence. The evidence supports actual damages of $16,000. The trial court found that Karimi is entitled to an offset against any judgment in the amount of $5,000 in attorney fees associated with her prior slander of title claim, and Hardwood Timber does not challenge that

---

[7] In its order denying Karimi's motion to correct error, the trial court admitted that its valuation of $108,630 was based on the fair market value of "unharvested" trees. Appellants' Appendix Volume II at 33. The trial court stated that Hardwood Timber had also alleged additional damages of $27,000 for unharvested "butt logs." *Id.* In assigning a value to the standing timber, the court noted that in an action for conversion, the measure of damages is generally the value of the converted property at the time of the conversion, as determined by a fair market value. *Id.* (citing *Daly v. Nau*, 167 Ind. App. 541, 555, 339 N.E.2d 71, 80 (1975), *trans. denied*, and *Hardy v. Heeter*, 120 Ind. App. 711, 717, 96 N.E.2d 682, 685 (1951)). We have determined that conversion damages are not the appropriate measure of damages in this case.

[8] Ray testified that, of the approximately 230 trees he had marked, there were 114 left standing at the time Karimi told him to stop cutting. He stated that he "would have made $55,000 for what was [left] there to sell." Transcript Volume III at 157. After subtracting expenses to harvest that timber and to clean up the property as promised in the contract, which he estimated at $39,000, Ray testified that Hardwood Timber's expected profit after harvesting was $16,000. *Id.* at 175.

finding on appeal. Accordingly, the evidence supports judgment and an award in favor of Hardwood Timber in the amount of $11,000.

[18] For the foregoing reasons, we reverse the trial court's judgment in favor of Hardwood Timber on its conversion claim as well as its award of damages, and we remand with instructions for the court to enter a corrected judgment consistent with this opinion.[9]

[19] Reversed and remanded.

Riley J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

E. Davis Coots
Alex Emerson
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEES

Paul D. Ludwig
Ludwig & Associates, PC
Indianapolis, Indiana

---

[9] In the conclusion section of its brief and without citation to authority or a developed argument, Hardwood Timber requests that this Court award appellate attorney fees. We decline to do so.